Argued and submitted March 11, affirmed May 27, 1987

MONGELLI et al,
*Appellants,*

*v.*

OREGON LIFE AND HEALTH
GUARANTY ASSOCIATION et al,
*Respondents.*

(85-2708; CA A40021)

737 P2d 633

Frank M. Parisi, Portland, argued the cause for appellants. With him on the briefs was Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Jerome Lidz, Assistant Attorney General, Salem, argued the cause for respondents. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Linda DeVries Grimms, Assistant Attorney General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Petitioners filed a petition for review of a final agency order and in the alternative for an alternative writ of mandamus to compel the Oregon Insurance Commissioner (commissioner) to assume the duties of the Oregon Life and Health Insurance Guaranty Association (association) and to reimburse petitioners for losses incurred due to the insolvency of a foreign insurance company.

The association consists of all life and health insurance companies authorized to transact business in Oregon. ORS 734.760(7); ORS 734.790. It was statutorily created to protect insureds in the event of impairment or insolvency of an insurer. It does so by assessing its members in order to spread the risk of insolvency to all member companies. ORS 734.770. In the event that the association does not carry out its statutory duties within a reasonable time, the commissioner is required to assume the duties and rights of the association. ORS 734.810(5).

Petitioners are trustees of Employers-Shopmen's Local No. 516 Pension Trust. In October, 1982, the trust purchased two "group annuity contracts" from National Investors Life Insurance Company (NILIC), an Arkansas insurer. The contracts provide for the repayment of the principal in October, 1987, and guaranteed interest installment payments. NILIC failed to pay any of the interest installment payments.

In July, 1983, an Arkansas court issued an order declaring NILIC insolvent and providing for "rehabilitation." The Arkansas Insurance Commissioner was appointed rehabilitator. The plan of rehabilitation, adopted by the court, required petitioners to elect one of ten proposed "settlement options." The option selected provides for a staggered return of the entire principal invested by the trust plus interest at a rate lower than that originally guaranteed by NILIC under the plan. It is certain that the trust will sustain some loss unless the association performs its statutory duties.

On May 20, 1985, petitioners made a formal demand on both the association and on the commissioner for payment for the losses incurred by the trust. The association took no action. The commissioner referred the matter to the attorney general, who advised petitioners by a September 5, 1985, letter

that the commissioner would not assume the duties of the association "at the present time."

ORS 734.810(3) sets forth the duties of the association with regard to a foreign insurer:

"[I]f a foreign or alien insurer is an insolvent insurer, the association shall, subject to the approval of the commissioner:

"(a)   Guarantee, assume, or reinsure, or cause to be guaranteed, assumed, or reinsured, the covered policies of residents;

"(b)   Assure payment of the contractual obligations of the insolvent insurer to residents; and

"(c)   Provide such money, pledges, notes, guarantees or other means as are reasonably necessary to discharge such duties."[1]

Because the association has failed to pay petitioners' losses, petitioners sought a writ of mandamus to compel the commissioner to assume the duties of the association pursuant to ORS 734.810(5):

"If the association fails to act as required in subsections (2) and (3) of this section *within a reasonable time,* the commissioner shall have the powers and duties of the association under ORS 734.750 to 734.890 with respect to insolvent insurers." (Emphasis supplied.)

The trial court issued an alternative writ of mandamus, which was answered by the commissioner. Petitioners then moved for a peremptory writ. The trial court denied the motion and dismissed the writ, because, in part, it concluded that the commissioner has "considerable discretion" under the statute.[2] We affirm.

■■   The commissioner argues that there is an alternate

---

[1] "Insolvent insurer," as used in ORS 734.810(3), means:

"[A] member insurer which, after September 13, 1975, becomes insolvent and is placed under a final order of liquidation, rehabilitation or conservation by a court of competent jurisdiction." ORS 734.760(6).

[2] The trial court appears to have concluded that the discretion arises from the commissioner's authority to approve the actions of the association. That discretion exists when the association acts under the statutory scheme. The question, however, is not whether she must approve the association's actions, because it has not acted. The question is whether, given that inaction, she must act to assume the association's duties herself. *Compare* ORS 734.810(3) and (5).

basis for affirmance, and we address that argument first. She contends that the trial court's dismissal of petitioners' writ should be affirmed, because ORS 183.490 provides the exclusive remedy to compel the commissioner to act. Petitioners, however, argue that they need not pursue that administrative remedy before the circuit court can grant mandamus under ORS 34.110,[3] because ORS 183.490 does not provide a "plain, speedy and adequate remedy" at law. We disagree.

ORS 183.490 provides:

"The court may, upon petition as described in ORS 183.484, compel an agency to act where it has unlawfully refused to act or make a decision or unreasonably delayed taking action or making a decision."

The various APA statutes governing judicial review provide the sole and exclusive methods of obtaining judicial review and, "a party may not ignore the judicial review provisions of the APA in favor of a general * * * remedy." *Bay River v. Envir. Quality Comm.,* 26 Or App 717, 720, 554 P2d 620 *rev den* 276 Or 555 (1976). Petitioners are precluded from obtaining mandamus under ORS chapter 34 because they have a remedy under the APA even if they do not prevail in their attempt to obtain it. *Dinsdale v. Young,* 72 Or App 778, 779, 697 P2d 200 (1985).

■    Their inability to obtain mandamus does not completely resolve this case, however, in the light of the fact that petitioners also sought review of the commissioner's actions under ORS 183.484. Although they did not rely on that statute on appeal, we conclude that the allegations in support of review under ORS 183.484, in conjunction with the allegations in support of mandamus, are sufficient for this court to consider the merits of the petition under ORS 183.490,[4] which

---

[3] ORS 34.110 provides:

"A writ of mandamus may be issued to any inferior court, corporation, board, officer or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station; but though the writ may require such court, corporation, board, officer or person to exercise judgment, or proceed to the discharge of any functions, it shall not control judicial discretion. *The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law.*" (Emphasis supplied.)

[4] This case differs from *Dinsdale v. Young, supra,* 72 Or App 778 in this respect. In *Dinsdale,* the plaintiff did not file a ORS 183.484 petition and the court, therefore, could not construe his mandamus action as an action under ORS 183.490.

expressly provides that proceedings under it are to be initiated by "petition as described in ORS 183.484." ORS 183.484 provides:

> "(1)   Jurisdiction for judicial review of orders other than contested cases is conferred upon the Circuit Court of Marion County and upon the circuit court for the county in which the petitioner resides or has a principal business office. Proceedings for review under this section shall be instituted by filing a petition in the Circuit Court for Marion County or the circuit court for the county in which the petitioner resides or has a principal business office.
>
> "* * * * *
>
> "(3)   The petition shall state the nature of the petitioner's interest, the facts showing how the petitioner is adversely affected or aggrieved by the agency order and the ground or grounds upon which the petitioner contends the order should be reversed or remanded. The review shall proceed and be conducted by the court without a jury."

Petitioners filed a petition under ORS 183.484 and alleged that the attorney general's letter of September 5, 1985, is an agency order as defined in ORS 183.310(5):

> "(a)   'Order' means any agency action expressed orally or in writing directed to a named person or named persons, other than employes, officers or members of an agency. 'Order' includes any agency determination or decision issued in connection with a contested case proceeding. * * *
>
> "* * * * *
>
> "(b)   'Final order' means final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:
>
> "(A)   Precedes final agency action; or
>
> "(B)   Does not preclude further agency consideration of the subject matter of the statement or declaration."

Petitioners do not specifically contend that the attorney general's letter is a final order, as opposed to a mere order. It is clear, however, that it is not a final order, because it does not preclude further consideration of the appropriateness of the commissioner's decision not to assume the duties of the association. *See Shepherd v. OLCC,* 81 Or App 201, 204, 724 P2d

901 (1986).[5] Thus, petitioners are entitled to judicial review under ORS 183.484 and ORS 183.490 *only* if interlocutory relief is authorized under ORS 183.480(3). *See Shepherd v. OLCC, supra,* 81 Or App at 204. That statute provides:

"No action or suit shall be maintained as to the validity of any agency order except a final order as provided in this section and ORS 183.482, 183.484, 183.490 and 183.500 or except upon showing that the agency is proceeding without probable cause, or that the party will suffer substantial and irreparable harm if interlocutory relief is not granted."

■ ■ Petitioners made no allegations to support a claim that they will suffer "substantial and irreparable harm" if interlocutory relief is not granted. Their petition could be construed, however, to allege that the commissioner is "proceeding without probable cause," which ORS 183.480 does not define. We conclude that, in the context of the APA, it means without a reasonable basis for the action or inaction. Petitioners alleged:

"The duty imposed on the Commissioner by ORS 734.810(5) to exercise the powers and duties of the Association with respect to insolvent insurers if the Association fails to act within a reasonable time is a mandatory duty that leaves no discretion in the Commissioner.

"* * * * *

"The Commissioner has violated 734.810(5) by failing to exercise the powers and duties of the Association to reimburse the Trust for its losses on the NILIC contracts."

The commissioner gave these reasons for not undertaking the duties of the association:

"In Oregon alone there is approximately $30,000,000 in premiums sold through NILIC. To date I have received a few inquiries regarding the impact of Baldwin-United and NILIC's situation but the inquires are insignificant in light of the amount of premiums written in the State.

"What I have to weigh as Commissioner is when would be the best time to act. Assuming I would have triggered the Association on January 13, 1983, when the first order of

---

[5] This case differs from *Standard Ins. Co. v. Olin,* 303 Or 136, 734 P2d 352 (1987). There, the Supreme Court construed two documents issued contemporaneously to constitute a final order. Here, the only document which could be an order expressly does not preclude further agency consideration.

rehabilitation was entered, there would have been no way for me, or any other Insurance Commissioner to determine what the amount of losses for individual policyholders would be or whether there would be any losses.

"Since that date there has been a substantial amount of negotiation among the Insurance Commissioners of the 50 states, the Attorney Generals' offices, numerous broker dealers who marketed the program, class action plaintiffs who have filed law suits against broker dealers, the Internal Revenue service, and numerous other parties.

"[A]s a result of [the] negotiation, the pot for insureds has been increased at least $140 million. In addition, as late as January 1986, the plaintiffs' class have been able to bring in an additional six broker dealers to enhance the amount of money to be received by policyholders.

"The exhibits show that even as of today it is unclear as to whether there will be losses and, if there are losses, the extent of the losses.

"In the present case should I require the Guaranty Association to pay I would be doing a disservice not only to the Association but to the policyholders and people of the state who would eventually bear the loss incurred by the Association paying any additional benefits."

The commissioner was given the discretion under ORS 734.810(5) to determine whether the association has failed to act within a reasonable time. We conclude that that statutory grant of discretion and her stated reasons for the decision indicate that she did have a rational basis for deciding not to assume the duties of the association at "the present time." Accordingly, we conclude that ORS 183.480(3) does not provide a basis for interlocutory relief and that relief under ORS 183.484 and ORS 183.490 is, therefore, also not available.

Affirmed.