Argued and submitted April 14, order reversed in part; otherwise affirmed October 11, Caragol's reconsideration denied November 24, 1989, Oregon Gov't Ethics' reconsideration denied January 5, both petitions for review pending 1990

CARAGOL,
*Petitioner,*

*v.*

OREGON GOVERNMENT ETHICS
COMMISSION,
*Respondent.*

(CA A49175)

780 P2d 751

Robert L. Engle, Woodburn, argued the cause for petitioner. With him on the brief was Eichsteadt, Bolland, Engle & Schmidtman, Woodburn.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioner seeks review of an order of the Oregon Government Ethics Commission (Commission) that held that he had violated the Oregon Government Ethics Law, ORS 244.010 *et seq,*[1] while serving on the City Council of Woodburn. We reverse with respect to alleged violations of ORS 244.120 and otherwise affirm.

In 1981, some interested Woodburn citizens advocated development of a retirement care facility to be known as Grace Village. Between 1981 and 1985, steps were taken to develop the project, including obtaining a financial commitment from FirstWest Mortgage Co. that was contingent on its securing a 50 percent co-lender. In December, 1984, Woodburn Construction Co. began building. In August, 1985, Woodburn loaned $245,000 to the project and received a purchase money mortgage on the property as collateral for the loan.

In January, 1986, FirstWest Mortgage Co. withdrew its loan commitment when it was unable to secure a co-lender. Other financial backers were not found, and the Grace Village developers began to try to persuade the city to establish a Hospital Bond Authority (HBA) as a method of financing the project. *See* ORS 441.525 *et seq.* In July, 1986, Woodburn Construction Co. filed an action seeking $723,702 from the developers for labor and materials that it had expended on the development. The action named the city as a defendant in order to determine the priority of the city's security interest with respect to the contract and lien rights of Woodburn Construction Co. No damages were sought from the city.

Petitioner is a real estate broker and 50 percent owner of Estates Realty in Woodburn. The other 50 percent is owned by the partners in Woodburn Construction Co. In the fall of 1986, petitioner ran for the city council, publicly stating that one of his reasons for doing so was to create the HBA. He was elected and was sworn in at the council meeting on December 8, 1986. At that meeting, without stating that he had a potential conflict of interest, he voted to expedite the city's creation of the HBA. At an orientation meeting the

---

[1] Petitioner was subject to Oregon Laws 1979, chapter 666. Citations are to the statutes before the 1987 amendments. Or Laws 1987, ch 566.

following week, the city attorney advised the newly elected council about the Oregon ethics law and, as a result of that meeting, petitioner sent a letter to the Commission requesting an advisory opinion. The letter disclosed his interest in Estates Realty and his relationship with the owners of Woodburn Construction Co. It also stated that the construction company was engaged in litigation with the city and enclosed a copy of the complaint. Petitioner asked if he had a conflict with regard to the pending litigation or the formation of the HBA.

On January 12, the council met, and the city attorney read petitioner's letter into the council minutes. Petitioner then voted on HBA matters. On January 13, the Commission sent petitioner a draft advisory opinion suggesting that he voluntarily disclose his interest in order to avoid any appearance of impropriety. On January 19, petitioner participated in a special council session, when a name was selected for the HBA and the number of members was decided. On January 22, the Commission issued an advisory opinion, again concluding that petitioner should voluntarily disclose his interest. On January 26, the city attorney read into the minutes the advisory opinion as well as an opinion that he had prepared that discussed petitioner's position and the city attorney's conclusion that no conflict of interest existed. The city attorney stated that it was appropriate for petitioner to declare a conflict of interest as a matter of caution. On February 9 and February 23, the city attorney stated that petitioner had abstained from voting on HBA issues before the council on those dates because of the Commission's opinion. On March 1, petitioner stated a potential conflict on matters involving the Woodburn Construction Co. litigation and abstained from voting.

As a result of a complaint filed with the Commission by an opponent of the Grace Village project, petitioner was charged with six violations of the Ethics Code, three of which the Commission held that he had committed.

■ Petitioner's first six assignments of error challenge the Commission's conclusion that he had failed to disclose a

"potential conflict of interest" in violation of ORS 244.120.[2] The Commission found that petitioner had not obtained any financial gain by the use of his office but that a potential conflict had existed for two reasons: (1) Petitioner hoped and expected that, if Grace Village were built, he would earn commissions on sales by owners of homes in nearby Senior Estates who desired to move into Grace Village; (2) there was the possibility that he might earn a commission from the sale of a tract adjacent to Grace Village that was listed for sale with Estates Realty and on which Grace Village held a right of first refusal.

Petitioner argues that the Commission erroneously interpreted ORS 244.020(4), which, before its amendment in 1987, provided, in part:

"'Potential conflict of interest' means any transaction where a person acting in a capacity as a public official takes any action or makes any decision or recommendation, the effect of which would be to the private pecuniary benefit or detriment of the person or a member of the person's household * * *."

Petitioner argues that he did not have a potential conflict of interest, because formation of the HBA, not the sale of hospital bonds and building Grace Village, was the only issue before the council. Any decision about whether bonds would be sold to finance the development of Grace Village would be made by the HBA, not the council.

The Commission rejected petitioner's argument:

"To hold [as petitioner argues] would mean that a public official could actively support a proposed project which he hoped and expected to result in a financial benefit to him without declaring a 'potential conflict of interest' if he could demonstrate that such a benefit was only 'possible' and was dependent upon action by a third party."

The Commission held that "would" in ORS 244.020(4)

---

[2] ORS 244.120(1)(a) provided:

"When involved in a potential conflict of interest, a public official shall:

"(a) If the public official is an elected public official, other than a member of the Legislative Assembly, or an appointed public official serving on a board or commission, announce publicly the nature of the potential conflict prior to taking any official action thereon."

requires disclosure when a benefit *might* arise at some time in the future.[3] The scope of our review is to determine whether the order is within the statutory text and the policy of safeguarding the public trust by preventing personal gain through an official's access to the attributes of government. ORS 183.482(8)(a); *Davidson v. Oregon Government Ethics Comm.*, *supra* n 3, 300 Or at 418, 421.

The Commission's application of the potential conflict of interest term does not satisfy the tests that we have to apply. ORS 244.020(4) does not define a potential conflict of interest by the *subjective* expectation of a public official. It defines that interest by an objective test as an "action * * * the *effect of which would be* * * * private pecuniary benefit." (Emphasis supplied.) Application of the statute requires an evaluation of the closeness or the remoteness of the potential benefit to the action taken. There has to be a point at which, irrespective of an official's hopes, an action cannot, as a matter of law, be said to have resulted in a benefit or even a reasonable expectation of one. Identification of a potential conflict of interest in a particular case requires a determination of that point, not just the announcement of a boundless generalization, as the Commission did here.

We also do not agree with the Commission that the evidence admits of the conclusion that the "effect" of petitioner's participation in the formation of the HBA "would be" the enjoyment of commissions from the sale of real estate. The issue before the city council was whether to enact an ordinance to establish an HBA, which would have been an independent body with the power to decide whether to proceed with Grace Village, whether to accept the application of the developers for assistance and whether to sell bonds to finance the project. Those are the effective acts that could result in the creation of Grace Village with its attendant *possible* benefits to petitioner, and petitioner would have nothing to do with the acts of HBA.

There may be situations where a connection can be

---

[3] The Commission relied in part on *Black's Law Dictionary* to equate "would" with "might." We note that the use of dictionary definitions in deciding cases is suspect, at best. *See Davidson v. Oregon Government Ethics Comm.*, 300 Or 415, 420, 712 P2d 87 (1985) (Jones, J.); *but see State v. Zybach*, 308 Or 96, 99, 775 P2d 318 (1989) (Jones, J.).

said to exist, to a substantial probability, between an action taken by an official and a financial benefit to the official, even though other actions must be taken by others to bring about the benefit. To hold as the Commission did on these facts would require an official to declare a potential conflict of interest any time that the official makes a choice to support any project that conceivably could bring personal financial gain, no matter how remote the possibility. We do not believe that the legislature intended that result. Paragraphs 1 and 2 of the order are erroneous.

■  Petitioner also assigns error to the Commission's conclusions that he unlawfully failed to report in his 1987 statement of economic interest, ORS 244.070(2) and (3),[4] loans by Woodburn Construction Co. to Estates Realty or a deposit by Estates Realty into an interest bearing account with Woodburn Construction Co. The Commission held that those relationships between Estates Realty and Woodburn Construction Co. constitute economic interests derived from a business having legislative or administrative interests with the council that should have been reported, because Woodburn Construction Co.'s pending lawsuit and its payment of permit fees were within the definition in *former* ORS 244.020(7):

" 'Legislative or administrative interest' means an economic interest, distinct from that of the general public, in one

---

[4] *Former* ORS 244.070 provided, in part:

"The following additional economic interest shall be reported for the preceding calendar year only if the source of that interest is derived from an individual or business which has been doing business, does business or could reasonably be expected to do business with or has legislative or administrative interest in the governmental agency of which the public official is a member or over which he has authority:

"* * * * *

"(2)  Each person to whom the public official or a member of the household of the public official owes or has owed money in excess of $1,000, the interest rate thereon and the date of the loan, except for debts owed to any federal or state regulated financial institution or retail contracts.

"(3)  Each business, principal address, and brief description of its nature, in which the public official or a member of the household of the public official has or has had a personal, beneficial interest or investment in excess of $1,000, except for individual items involved in a mutual fund or a blind trust, or a time or demand deposit in a financial institution, shares in a credit union, or the cash surrender value of life insurance."

or more bills, resolutions, regulations, proposals or other matters subject to the formal vote or official action of a public official."

We agree with the Commission that the lawsuit comes within that definition. Although Woodburn Construction Co. did not seek damages from the city, the lien priorities issue constituted an "economic interest," and the record establishes that decisions regarding the lawsuit were subject to formal vote or official action of the council and, therefore, of petitioner. However, we do not agree that, on these facts, applications for permits constitute a "legislative or administrative interest.". There is no evidence that Woodburn Construction Co.'s applications were in any wise different from applications for permits required by other members of the public and no evidence that grant or denial of a building permit would or could come before the Woodburn City Council as a bill, resolution or proposal or was in any way subject to the formal vote or official action of the council. We, therefore, affirm the Commission's conclusions and its order with respect to violations of *former* ORS 244.070 *only* insofar as they involve the lawsuit by Woodburn Construction Co.

Order reversed as to paragraphs 1 and 2; otherwise affirmed.[5]

_____

[5] The petition for judicial review is directed to the whole order but, of course, petitioner does not challenge the dismissal of three of the charges, and we affirm as to that part of the order.