Argued and submitted December 8, 1994, decision of the Court of Appeals affirmed and judgment of the circuit court reversed March 30, 1995

State Representative Thomas M. BRIAN,
*Petitioner on Review,*

*v.*

STATE OF OREGON,
acting by and through the
OREGON GOVERNMENT ETHICS COMMISSION,
*Respondent on Review.*

(CC C920337CV; CA A77344; SC S41348)

891 P2d 649

Marc D. Blackman, of Ransom, Blackman & Weil, Portland, argued the cause and filed the petition on behalf of petitioner on review.

John T. Bagg, Assistant Attorney General, Salem, argued the cause on behalf of respondent on review. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

DURHAM, J.

## DURHAM, J.

The issue in this case is whether the trial court properly enjoined the Oregon Government Ethics Commission[1] (Commission) from investigating petitioner, a state representative, for an alleged violation of the "Code of Ethics," set forth in ORS 244.040. The Court of Appeals held that the trial court improperly enjoined the investigation, because the trial court applied the wrong standard in determining whether the Commission had authority to conduct the investigation and improperly assessed the weight of the evidence before the Commission at the pre-investigation stage. *Brian v. Oregon Government Ethics Commission*, 126 Or App 358, 868 P2d 1359 (1994). We affirm the decision of the Court of Appeals.

The Commission is responsible for enforcing prohibitions on the conduct of certain public officials, as provided in ORS chapter 244.[2] Petitioner is subject to the Commission's authority because he is a "legislative official"[3] and a "public official,"[4] as those terms are defined by the statute.

ORS 244.260 divides the Commission's investigation process into various "phases." The first phase, called the "preliminary review phase," begins either on the filing of a written complaint by any person or at the Commission's own instigation. ORS 244.260(1).[5] The purpose of the "preliminary review phase," which may not last more than 90 days,

---

[1] The Oregon Government Ethics Commission is now known as the Oregon Government Standards and Practices Commission. Or Laws 1993, ch 743, § 32.

[2] In this opinion, we refer, in both present and past tenses, to the 1991 version of chapter 244, which was in effect when the Commission acted in this case. That chapter was amended by Oregon Laws 1993, chapter 743. Those amendments are not at issue in this case.

[3] ORS 244.020(13) (1991) defined "legislative official" to mean, among other things, "any member * * * of the Legislative Assembly."

[4] ORS 244.020(16) (1991) provided:

" 'Public official' means any person who is serving the State of Oregon or any of its political subdivisions or any other public body of the state as an officer, employee, agent or otherwise, and irrespective of whether the person is compensated for such services."

[5] ORS 244.260(1) (1991) provided:

"Upon its own instigation or signed complaint of any person, the commission may make investigations with respect to statements filed under this chapter or resolution adopted pursuant thereto, alleged failure to file any required statement, or any other alleged violation of any provision of this chapter, and

ORS 244.260(6),[6] is to determine whether sufficient evidence exists to warrant an investigation. Before the Commission may proceed to the second phase, the investigation, ORS 244.260(1) requires that the Commission "make a finding that there is cause to undertake an investigation." The term "cause" is defined in ORS 244.260(9):

"As used in this section, 'cause' means that there is a substantial, objective basis for believing that an offense or violation may have been committed and the person to be investigated may have committed the offense or violation."

On February 25, 1992, the Commission found that it had "cause," within the meaning of ORS 244.260(9), to investigate petitioner for an alleged violation of ORS 244.040(1) and (2).[7] That finding was based on evidence that

shall report findings together with supporting reasons. The public official who is the subject of a complaint or of the commission's own action shall be notified immediately upon receipt of the complaint or upon adoption of a motion by the commission to undertake any action concerning the public official. The notice shall be given by telephone if the official can be reached and shall also be in writing mailed to the official. The notice shall include the nature of the complaint or motion. Before investigating any complaint or an investigation on its own instigation, the commission shall make a finding that there is cause to undertake an investigation, notify the public official who is the subject of the investigation, identify the issues to be investigated and shall confine its investigation to those issues. If the commission finds reason to expand its investigation, it shall move to do so and shall record in its minutes the issues to be investigated before expanding the scope of its initial investigation and formally notify the complainant and the public official who is the subject of the complaint of the expansion and the scope thereof. If the commission does not make a finding of cause, it shall dismiss the complaint or rescind its motion and shall formally enter the dismissal or rescission on its records. The commission shall notify the public official of the dismissal or rescission. After dismissal or rescission, the commission shall take no further action involving the public official unless a new and different complaint is filed or action at its own instigation is undertaken based on different conduct."

[6] ORS 244.260(6) (1991) provided, in part:

"The period of time from the filing of a complaint or from acting on the commission's own instigation to the finding of cause or dismissal of the complaint or rescission of the motion shall be termed the Preliminary Review Phase and shall not exceed 90 days unless a delay is stipulated to by both the public official and the Oregon Government Ethics Commission with the commission reserving a portion of the delay period to complete its actions."

[7] ORS 244.040(1) and (2) (1991) provided:

"The following actions are prohibited regardless of whether potential conflicts of interest are announced or disclosed pursuant to ORS 244.120:

"(1) No public official shall use official position or office to obtain financial

petitioner had received a $10,000 check from Seiyu International Corporation (Seiyu) and that Seiyu had given petitioner the choice of how to allocate the funds "between his reelection campaign and compensation to him for future services to be rendered." The source of the evidence was a sworn statement by petitioner in a separate proceeding.

Petitioner responded to the allegation at the Commission's meeting on April 9, 1992. Petitioner explained that he had allocated $2,500 of the $10,000 check toward his reelection campaign and that the remaining $7,500 was compensation for his efforts, undertaken after receiving the check, in assisting Seiyu to obtain refinancing for real estate that it had purchased earlier. Petitioner did not submit any documentation, such as a fee agreement or consulting contract, to support his contention that the $7,500 was compensation. He denied that any portion of the $10,000 was a gift. At the end of the meeting, a motion to dismiss the investigation failed on a tie vote, and the Commission voted to postpone the matter for one month.

On April 15, 1992, petitioner filed in the circuit court a petition for judicial review of the Commission's February 25, 1992, order finding "cause" to investigate him. Petitioner sought, among other things, a preliminary injunction barring the Commission from continuing the investigation, on the ground that the Commission was "proceeding without probable cause," under ORS 183.480(3), when it found "cause" to investigate him, on February 25, 1992. The circuit court orally granted the preliminary injunction on May 7, 1992, and entered an injunction order on May 29, 1992, stating that the Commission lacked a "reasonable suspicion" that the funds

gain for the public official, other than official salary, honoraria or reimbursement of expenses, or for any member of the household of the public official, or for any business with which the public official or a member of the household of the public official is associated.

"(2) No public official or candidate for office or a member of the household of the public official or candidate shall solicit or receive, whether directly or indirectly, during any calendar year, any gift or gifts with an aggregate value in excess of $100 from any single source who could reasonably be known to have a legislative or administrative interest in any governmental agency in which the official has or the candidate if elected would have any official position or over which the official exercises or the candidate if elected would exercise any authority."

were anything other than a campaign contribution and compensation for services rendered.

The Commission held a telephonic meeting on May 26, 1992, to discuss the issuance of the preliminary injunction. The Commission understood the trial court's order to allow the Commission to continue with the "preliminary review phase" of its investigation. Although it lacked additional evidence that petitioner had violated ORS 244.040, the Commission nevertheless passed a second motion, finding "cause" to investigate petitioner, and also passed a motion to move from an investigation to a contested case proceeding, charging petitioner with a violation of ORS 244.040(1).

The trial court issued a second preliminary injunction on June 15, 1992, and a permanent injunction on October 6, 1992, barring the Commission from investigating petitioner any further. The court found that, on May 26, 1992, the Commission continued to lack a "reasonable suspicion" to believe that petitioner had violated ORS 244.040(1) or (2). The court also concluded that, even if the Commission did have "cause" to investigate petitioner on May 26, 1992, its action was untimely under ORS 244.260(6).[8]

The Commission's finding of "cause" to investigate petitioner is an agency "order," as the term is defined by the Administrative Procedures Act (APA).[9] Petitioner acknowledges, however, that the finding is not a "final order," within the meaning of ORS 183.310(5)(b).[10] ORS 183.480(3) precludes judicial review of agency orders, other than final orders,

---

[8] The trial court found that the Commission's finding of "cause" on May 26, 1992, was untimely, because the Commission had commenced the "Preliminary Review Phase" of its investigation on or before February 18, 1992, and, under ORS 244.260(6), the Commission was required to complete that phase by May 18, 1992.

[9] ORS 183.310(5)(a) (1991) provided, in part:

" 'Order' means any agency action expressed orally or in writing directed to a named person or named persons, other than employees, officers or members of an agency. 'Order' includes any agency determination or decision issued in connection with a contested case proceeding."

[10] ORS 183.310(5)(b) (1991) provided:

" 'Final order' means final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:

"(A) Precedes final agency action; or

"(B) Does not preclude further agency consideration of the subject matter of the statement or declaration."

"except upon showing that the agency *is proceeding without probable cause*, or that the party will suffer substantial and irreparable harm if interlocutory relief is not granted." (Emphasis added.)

The APA does not define the phrase "proceeding without probable cause." The Court of Appeals construed the phrase as meaning "without a reasonable basis for the action or inaction." *Brian*, 126 Or App at 363 (quoting *Mongelli v. Oregon Life and Health Guaranty*, 85 Or App 518, 524, 737 P2d 633 (1987)). Accordingly, the Court of Appeals held that the proper inquiry, in assessing whether the Commission was "proceeding without probable cause," is to consider "whether the Commission had a reasonable or a substantial, objective basis for believing that [petitioner] *may* have violated ORS 244.040." *Brian*, 126 Or App at 364 (emphasis in original). The court held that the evidence before the Commission permitted the inference that petitioner may have violated ORS 244.040 and that, therefore, the Commission had a reasonable basis for proceeding with an investigation. *Id.*

Petitioner argues that the Court of Appeals erroneously infused the "without probable cause" standard of ORS 183.480(3) into the definition of "cause" in ORS 244.260(9). According to petitioner, in determining whether the Commission was "proceeding without probable cause," the court should have considered whether the Commission was proceeding in the absence of facts or circumstances that would lead a reasonably prudent person to believe that petitioner *had violated* ORS 244.040.

■     In discerning what the legislature meant by the phrase "proceeding without probable cause," in ORS 183.480(3), we begin by examining the statute's text and context. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (describing methodology for statutory construction). In interpreting the text of a statutory provision, we consider "rules of construction that bear directly on the interpretation of the statutory provision in context," including the "well-established rule * * * that words in a statute that have a well-defined legal meaning are to be given that meaning in construing the statute." *Gaston v.*

*Parsons*, 318 Or 247, 253, 864 P2d 1319 (1994) (citations omitted).

The legislature first authorized judicial review of nonfinal agency orders, "upon showing that the agency is proceeding without probable cause," as part of the 1971 amendments to the APA. *See* Or Laws 1971, ch 734, § 18.[11] As we noted in our recent decision in *State v. Matthews*, 320 Or 398, 403 n 3, 884 P2d 1224 (1994), we may look to the constitutional standard of "probable cause" because, in 1971, the legislature had not defined "probable cause," as the term is used in ORS 183.480(3). In 1971, the term "probable cause" had a settled meaning in the criminal context. In *State v. Jones*, 248 Or 428, 435 P2d 317 (1967), the court explained that "probable cause" to arrest "is the existence of circumstances which would lead a reasonably prudent [person] to believe in the guilt of the arrested party. Mere suspicion or belief, unsupported by facts or circumstances, is insufficient." 248 Or at 432 (citing *State v. Duffy et al*, 135 Or 290, 295 P 953 (1931)).[12]

Under ORS 183.480(3), a court must determine whether the agency "is proceeding without probable cause" when it issues the challenged "order." Applying the settled definition of "probable cause" in this context, we conclude that an agency has "probable cause" to proceed, *i.e.*, to issue the "order" in question, if the facts and circumstances provide an

---

[11] Before 1971, ORS 183.420 provided, in part:

"This section shall not be construed as authorizing any agency to proceed against any person unless there is *reasonable cause* for such action." (Emphasis added.)

No provision of the APA expressly authorized a court to review whether an agency had "reasonable cause" to take action.

In 1971, the legislature repealed ORS 183.420 and enacted ORS 183.480(1)(c), which permitted judicial review of a nonfinal agency order on a showing either that the agency "is proceeding without probable cause" or that "the party will suffer substantial and irreparable harm if interlocutory relief is not granted." Or Laws 1971, ch 734, §§ 18, 21. That provision was later re-enacted as ORS 183.480(3). Or Laws 1975, ch 759, § 14. The legislature has amended ORS 183.480(3) in other respects that are not at issue in this case.

[12] The legislature has since defined "probable cause," in the context of an arrest, as "a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11).

objectively reasonable basis for the agency to proceed.[13] In assessing whether an agency "is proceeding without probable cause," a reviewing court should not give deference to the agency's determination that it has an objectively reasonable basis to proceed. The determination of "probable cause" is a legal question for the court. *Gustafson v. Payless Drug Stores*, 269 Or 354, 357, 525 P2d 118 (1974). To determine whether a particular agency has an objectively reasonable basis to proceed, the reviewing court must look to the legislature's delegation of authority to the agency whose action is challenged. In this case, the Commission's authority "to proceed" with an investigation is constrained by the requirement, in ORS 244.260(1), that it must have "cause" to investigate. In determining whether the Commission had "probable cause to proceed," the proper inquiry, therefore, is whether the Commission had an objectively reasonable basis for concluding that it had "cause," within the meaning of ORS 244.260(1), to investigate petitioner.

■        We next must discern what the legislature meant by the term "cause." Again, we begin with the text and context of the statutory definition. ORS 244.260(9) defines "cause" to mean

> "a substantial, objective basis for believing that an offense or violation may have been committed and the person to be investigated may have committed the offense or violation."

When interpreting a statutory provision, we typically give words of common usage their plain, natural, and ordinary meaning. *PGE*, 317 Or at 611. The dictionary defines the word "substantial" to mean, as pertinent, "having a solid or firm foundation: soundly based: carrying weight," or "considerable in amount." *Webster's Third New Int'l Dictionary* 2280 (unabridged 1993). The term "substantial" may thus refer to the quantity or quality of the noun that it modifies. Read in context, the term "substantial," in ORS 244.260(9), refers qualitatively to the Commission's "basis" for believing

---

[13] This understanding of the term "probable cause" also comports with this court's interpretation of the term in another, noncriminal context. In *Broyles v. Brown*, 295 Or 795, 800, 671 P2d 94 (1983), this court construed the phrase "probable cause for appeal," as used in ORS 19.160, to mean an "objective legal basis for the appeal."

that an accused "may" have committed an offense or violation. The word "objective," read in context, means: "expressing or involving the use of facts without distortion by personal feelings or prejudices." *Webster's* at 1556. Read together, the phrase "substantial, objective basis" means a basis that is rooted in evidence with a "solid or firm foundation" and that does not derive from facts "distort[ed] by personal feelings or prejudices."

Petitioner contends that the term "cause" in ORS 244.260(9) controls the *Commission's* determination regarding its investigation and does not affect the *court's* "probable cause" determination under ORS 183.480(3). In addition, petitioner argues that the APA requires a showing of *probable* guilt of a violation, whereas the term "may" in ORS 244.260(9) arguably authorizes the Commission to investigate on the basis of virtually any evidence of, or even mere speculation about, a violation. Petitioner's proposed construction regarding the court's authority seems unlikely, because ORS 183.480(3) necessarily requires inquiry into the Commission's authority to investigate a potential violation. Logically, a determination that certain facts justify commencement of an investigation should not depend on a showing, before the investigation, of probable guilt of a violation. Nevertheless, because text and context are not entirely conclusive, we look to legislative history for guidance regarding the legislature's intent. *See PGE*, 317 Or at 612 (court looks to legislative history if text and context do not make legislature's intent clear).

The definition of "cause," in ORS 244.260(9), was enacted as part of the 1991 amendments to the statute. Or Laws 1991, ch 272, § 1; Or Laws 1991, ch 770, § 1a. Before 1991, the statute required the Commission to make a finding of "probable cause" before commencing an investigation. ORS 244.260(1) (1989). The legislature did not define the term "probable cause."

In 1991, several bills were introduced in the Oregon Senate to amend the government ethics law. They were referred to the Senate Committee on Government Operations. During a public hearing held on January 21, 1991, several committee members expressed a desire that the bills provide a definition of the term "probable cause." Following

the hearing, Senate staff members drafted the following definition, as part of Senate Bill 292:

> "As used in this section, 'probable cause' means that there is a substantial, objective basis for believing that more likely than not, an offense or violation has been committed and the person to be investigated has committed the offense or violation." SB 292-3 (hand-engrossed), § 14.

At a work session held on February 15, 1991, Gayle Ryder, the Senior Committee Administrator, discussed the definition before the Senate Government Operations Committee:

> "The problem during the interim . . . with the interim committee was that they wanted a definition. And we asked a number of sources — we asked the Ethics Commission and the [attorney general] and legislative counsel — and the only definition that they could come up with was, in fact, the criminal definition. And so that was the one that was used. This morning, it was suggested that perhaps a better way to proceed would be to have 'probable cause' changed to simply 'cause' * * *." Tape Recording, Senate Committee on Government Operations (SB 292), February 15, 1991, Tape 23, Side A.

Senator Jim Bunn objected to the suggestion that the term "probable cause" be replaced with a less stringent standard of "cause." He stated:

> "If you use the term 'may' instead of 'more likely than not,' virtually anyone 'may' have done something. All it takes is a wild allegation and someone 'may' have been guilty of it. And so 'probable cause' is determined, because if I say official X did such and such, well, until there is proof that official X didn't do such and such, then, of course, they 'may' have done it." *Ibid.*

Senator Tricia Smith responded:

> "Since this is not a . . . we're not talking about a criminal proceeding, I think that we can be a little more flexible in our language, than [we] could otherwise. And I think that we need to give the Ethics Commission the opportunity to work within these rules and not hamstring them to the point where they cannot function. And I am comfortable with the language without the words 'more likely than not' and with the word 'may,' for that reason." *Ibid.*

Senator Smith later moved that the term "probable cause," as used throughout SB 292, be replaced with the term "cause" and that the term be defined as "a reasonable objective basis to believe that an offense or violation may have been committed and the person to be investigated may have committed the offense or violation." The motion passed.

On February 20, 1991, the Senate Government Operations Committee held a work session on SB 292. Senator Bunn proposed amending the bill to replace the term "cause" with "probable cause" and to leave the term undefined. He explained:

> "By going back to the 'probable cause' that exists under the status quo, I think that the bill is acceptable. But again, if we use 'may have violated' and 'the person may have been the one that violated,' as the original bill had, I think we have a totally unworkable criteria that virtually anything and everything meets. And so I would suggest the amendment to go back to 'probable cause' which exists today." Tape Recording, Senate Committee on Government Operations (SB 292), February 20, 1991, Tape 27, Side A.

Senator Jane Cease responded:

> "I prefer the ... I was never comfortable with the statute when we put the 'probable cause' part in ... in '89? ... whenever we did it. And I am much more comfortable with the part that we voted out relating to that. And so I would not want the amendment." *Ibid.*

Senator Bunn countered:

> "To say that something 'may' have happened or that someone 'may' have committed it, in essence, says that an individual who is accused must prove that they could not have done something. Otherwise, the Commission automatically has 'probable cause,' because they 'may' have done so. Our threshold is so low that everyone 'may' have committed something until they can establish that they could not have been the one." *Ibid.*

Senator Smith then stated:

> "My concern with the term 'probable cause' is that we are only in the preliminary phase here, and we're trying to determine whether or not an investigation should occur. And I think that the threshold should be lower, at that decision making point, than 'probable cause.' I think that's much too

stringent to determine whether or not the Ethics Commission should even investigate the complaint, which is what they're trying to decide at this point in time." *Ibid.*

The Committee rejected Senator Bunn's proposed amendment and voted to send SB 292 to the Senate floor with a do-pass recommendation. Senator Bunn prepared a minority report, which substituted the term "probable cause" for "cause" and omitted any definition of the term. On the floor, the Senate rejected a motion to substitute the minority report for the majority report and passed SB 292 on March 4, 1991.

Following the Senate's passage of SB 292, that bill, along with related measures amending the government ethics law, was transmitted to the House of Representatives and was referred to the House Committee on Legislative Rules and Reapportionment. The committee held a public hearing on May 22, 1991. John DiLorenzo, a lawyer testifying on his own behalf, urged the committee to amend the bill to replace the term "cause" with "probable cause" and to omit the definition, as Senator Bunn had previously attempted to do. DiLorenzo's efforts failed.

On May 24, 1991, the committee held a public hearing on SB 296, an omnibus bill that incorporated SB 292 and elements of the other bills amending the government ethics law. Representative Ray Baum stated that he was "happy" with the language defining "cause." He explained:

"The 'cause' there is about as soft as you can get and still state that there seems to be some evidence to move forward, and we're not going to nail anybody to the wall on it being 'probable cause' that you did this deed, which is what 'probable cause' carries, that there's been some kind of criminal investigation that's gone forth and secret proceedings by the Grand Jury. We haven't done any of that here. Calling this 'probable cause,' I think, would mislead both the public and the process which apparently has been adopted." Tape Recording, House Committee on Legislative Rules & Reapportionment (SB 296), May 24, 1991, Tape 44, Side A.

On June 18, 1991, the legislature enacted SB 296, including the incorporated elements of SB 292 relating to "cause."

The statute's legislative history reveals that the legislature understood that, by amending the statute to substitute the term "cause" for "probable cause," and by enacting

the definition in ORS 244.260(9), it was imposing a less stringent standard on the Commission, at the pre-investigation stage, than had existed before the amendments. The legislature understood that, by using the term "may" in the definition of "cause," it was imposing a "soft" standard on the Commission at the pre-investigation stage.

■     In the light of the statute's legislative history, we conclude that the Court of Appeals correctly held that, on February 25, 1992, the Commission had an objectively reasonable basis to support its finding of "cause" to investigate petitioner for a possible violation of ORS 244.040(1) and (2).[14] The evidence before the Commission, that petitioner received a $10,000 check from Seiyu and that he was given the unfettered choice of how to allocate the funds between his re-election campaign and compensation for future services to be rendered, provided an objectively reasonable, factual basis for the Commission to conclude that it had "cause," within the meaning of ORS 244.260(9), to investigate whether petitioner had violated ORS 244.040(1) and (2). The evidence indicated that petitioner *may* have used his "official position or office to obtain financial gain," ORS 244.040(1), and that petitioner *may* have received a "gift * * * with an aggregate value in excess of $100 from any single source," ORS 244.040(2). That evidence was "substantial" in that it had a "solid or firm foundation," stated in petitioner's sworn statement about facts relevant to the elements of the charges under investigation, and it was "objective" in that it described facts, not mere feelings or conclusions, regarding conduct about which the witness had personal knowledge.

Petitioner argues that his receipt of the $10,000 check from Seiyu cannot constitute an unlawful "gift," under ORS 244.040(2), because he reasonably could not have

---

[14] Because we conclude that the Commission had "probable cause," within the meaning of ORS 183.480(3), to proceed on February 25, 1992, we need not address petitioner's argument that the Commission's second finding of "cause," on May 26, 1992, was untimely. If the Commission properly found "cause" to investigate petitioner on February 25, 1992, there was no need for the Commission to make a second finding of "cause" on May 26, 1992.

Because we do not reach the issue of the untimeliness of the Commission's May 26, 1992, order finding "cause," we also need not address the Court of Appeals' implicit holding that such a claim of untimeliness is not reviewable under ORS 183.480(3). *Brian*, 126 Or App at 364-65.

known that Seiyu had a "legislative or administrative interest," as defined by ORS 244.020(12):

> " 'Legislative or administrative interest' means an economic interest, *distinct from that of the general public,* in one or more bills, resolutions, regulations, proposals or other matters subject to the action or vote of a person acting in the capacity of a public official." (Emphasis added.)

At its meeting on April 9, 1992, the Commission's executive director, L. Patrick Hearn, explained the basis for the Commission's February 25, 1992, determination that Seiyu had a "legislative or administrative interest":

> "[T]he owner of a $120 million piece of commercial property certainly * * * would have some concern or interest as to actions that the state Legislature might take regarding * * * issues such as corporate taxes, commercial real estate, and so forth." Tape Recording, Oregon Government Ethics Commission Meeting, April 9, 1992.

Assistant Attorney General Twist elaborated:

> "It's very difficult for me to determine any area of legislative activity or inactivity that wouldn't have an impact upon what may be the, the largest single holder of commercial real estate in the State of Oregon in terms of * * * value. I submit to you * * * that that is a greater economic interest than * * * the average person holds, and that that economic interest is distinct from the * * * interest of the general public * * * within the definition." *Ibid.*

Petitioner contends that the Commission cannot rely on that evidence because the size of a company's assets does not give it an economic interest in legislation that is distinct from that of the general public. He relies on *Caragol v. Oregon Government Ethics Commission,* 98 Or App 593, 600, 780 P2d 751 (1989), and the Commission's conclusion in another case that an Oregon corporation with assets exceeding $4.9 billion did not have a "legislative or administrative interest," that was distinct from that of the general public, within the meaning of ORS 244.020(12). Those authorities are not persuasive, because they concerned final determinations regarding alleged violations of ORS chapter 244, not a determination whether "cause" existed to investigate a potential violation. We conclude that the evidence before the Commission on February 25, 1992, provided an objectively

reasonable basis for the Commission to conclude that Seiyu *may* have had a "legislative or administrative interest," within the definition in ORS 244.020(12).

■    Petitioner also argues that we should uphold the injunction on the alternative ground that, under ORS 183.480(3), he "will suffer substantial and irreparable harm if interlocutory relief is not granted." The circuit court did not find that petitioner proved the existence of such harm. In any event, we reject that argument, because we agree with the Court of Appeals that the types of harm on which petitioner relies, *e.g.*, damage to reputation that attends a lawful Commission investigation, "are inherent incidents of the open and public administrative process that the legislature has created in connection with the ethics laws," *Brian*, 126 Or App at 364, and that, if harms of that kind could prevent an agency from lawfully investigating a potential violation, the exception provided by ORS 183.480(3) would swallow the rule requiring a final order to invoke jurisdiction for judicial review. We hold that the trial court improperly enjoined the investigation.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed.