Argued and submitted May 23, affirmed December 13, 1995

## STATE OF OREGON,
*Respondent,*

*v.*

## ROLAND CLARK HOLLOWAY,
*Appellant.*

(93-03-1851-C; CA A82735)

908 P2d 324

Dan Maloney, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Robert B. Rocklin, Assistant Attorney General.

Before Warren, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals his conviction for manufacture of a controlled substance and possession of a controlled substance. He assigns error to the enhancement of his sentence for a commercial drug offense under ORS 475.996 on the basis of his use of "public lands" in the commission of his crimes. We affirm.

The property at issue, consisting of approximately 17,000 acres of land and 56 buildings and other facilities, originally belonged to the United States. In 1971, the United States entered into an agreement of sale with Pacific University, by which certain property "particularly described and enumerated in Exhibit 'A' " was sold to the University. Exhibit "A" listed a number of buildings and related items of personal property and did not include any underlying land. As to the land itself, the United States granted a "long term use permit" for the land on which the buildings were located. The United States reserved a right of entry and use of the land during an emergency and agreed to compensate Pacific University for the fair rental value of its use during an emergency.

In 1988, Pacific University sold its interest in the buildings to the Great Basin Society, a private organization engaged in education and research. Defendant is the facility manager for the Great Basin Society. He grew marijuana in one of the shop buildings owned by the Society. Local sheriff's officers executed a search warrant at the shop building and discovered defendant's marijuana. Defendant does not contest the validity of the search. Defendant was charged with manufacture and possession of a controlled substance, ORS 475.992(1)(a) and (4)(a), and he pleaded guilty to both charges.

At sentencing, the state argued that defendant's manufacture of marijuana was a commercial drug offense and that he is subject to sentencing enhancement on that basis. Among the factors on which the state relied in asserting the commercial nature of the offense was that defendant used "public lands" in the commission of his crime. ORS 475.996(1)(b)(I). Neither party argues about any other factors.

The trial court found that defendant had used public lands in growing marijuana, because the building in which he grew the marijuana, although privately owned, was situated on land owned by the United States. Defendant's sole assignment of error on appeal is that the trial court incorrectly concluded that he had used public lands in the growing of his marijuana. We review defendant's assignment for errors of law. *See State v. Johnson,* 116 Or App 252, 255, 841 P2d 643 (1992).

Defendant asserts two arguments in support of his assignment. First, he argues that the trial court erred in concluding that he had used public land in the commission of his crime, because the land itself had been sold to Pacific University, and no longer belongs to the United States. Second, he argues that even if the land still belongs to the United States, the building in which the crime was committed does not, and that constitutes a sufficient restraint on the alienability of the underlying land to deprive it of any "public" character. In support of his argument, defendant relies on dictionary definitions of "public lands" to mean:

> "The general public domain; unappropriated lands; lands belonging to the United States and which are subject to sale or other disposal under general laws, and not reserved or held back for any special governmental or public purpose."

*Black's Law Dictionary* 1393 (4th ed 1951); *see also Ballentine's Law Dictionary* 1022 (3d ed 1969). We note that defendant is not arguing that, because his grow operation took place in a building — as opposed to out of doors — he did not use public land. His argument is that the private ownership of the building changed the federal government's interest in the underlying land so as to deprive it of its public nature.

The state contends that defendant failed to preserve his first argument before the trial court. According to the state, defendant conceded that, under the 1971 agreement of sale with Pacific University, the United States retained ownership of the real estate on which the buildings conveyed were located. As to the second argument, the state argues that, as defined in *Webster's Third New International Dictionary* 1836 (unabridged ed 1993) and parallel definitions of the term "public lands" in the Oregon Revised Statutes, the term

refers broadly to "land owned by a government," regardless of any restraints on the use or sale of the property.

■ We begin with defendant's argument that he did not use public land, because the land on which his marijuana was grown belonged to Pacific University and not to the United States. There is some question whether defendant conceded the point below. The point, however, is not entirely free from doubt;[1] for the sake of argument, we assume that the matter was preserved. Nevertheless, we reject defendant's argument. The agreement of sale between the United States and Pacific University unambiguously conveys ownership only in the items listed in "Exhibit 'A,' " which contains a list of buildings and equipment, not of real property. The agreement separately conveys a "long term use permit" as to the land itself. We conclude that the trial court correctly construed the agreement and correctly concluded that the United States retained title to the land on which stood the building where defendant grew marijuana.

■ ■ We turn to defendant's argument that the private ownership of the building changes the nature of the federal government's interest in the underlying land such that the land can no longer be considered "public" within the meaning of ORS 475.996(1)(b)(I). That statute provides, in part:

"(1) A violation of ORS 745.992 shall be classified as crime category 8 of the sentencing guidelines grid of the State Sentencing Guidelines Board if:

"* * * * *

"(b) The violation constitutes possession, delivery or manufacture of a controlled substance and the possession, delivery or manufacture is a commercial drug offense. A possession, delivery or manufacture is a commercial drug offense for purposes of this subsection if it is accompanied by at least three of the following factors:

"* * * * *

---

[1] Following extended argument about the terms of the sale agreement between the United States and Pacific University, counsel for defendant said: "So, you know, I guess from that you can say that maybe the underlying land still belongs to the government." At that point, the parties limited their arguments to whether the private ownership of the buildings changed the federal government's interest in the land so as to deprive it of any public character.

"(I) The offender was using public lands for the manufacture of controlled substances[.]"

The statute does not define "public lands."

 To discern what the legislature intended by the use of the term, we begin with the words enacted properly read in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In so doing, we give words of common usage their plain, natural and ordinary meaning. *Id.* "Context" includes other statutes on the same subject or on related matters. *State v. Carr*, 319 Or 408, 411-13, 877 P2d 1192 (1994). If our examination of the text in context does not reveal the intentions of the legislature, we consult the legislative history as well. *PGE*, 317 Or at 610-12. If that inquiry does not bear fruit, then we resolve any remaining uncertainties by resorting to applicable maxims of statutory construction. *Id.*

 Dictionaries provide a useful starting point for determining what words mean, at least in the abstract. In that sense, they suggest what the legislature *could have* meant by the terms it enacted. They do not, however, reveal what the legislature in fact meant in the absence of some evidence that the legislature consulted and relied on a particular definition of a particular dictionary at the time of enactment. *Davidson v. Oregon Government Ethics Comm.*, 300 Or 415, 420, 712 P2d 87 (1985). Moreover, dictionaries are of limited utility in construing terms that have acquired specialized legal significance. *See Brian v. Oregon Government Ethics Commission*, 320 Or 676, 682, 891 P2d 649 (1995).

At common law, the term "public lands" referred to "unreserved and unappropriated public domain lands open to entry, settlement, and appropriation." *E.g., Newhall v. Sanger*, 92 US 761, 762-63, 23 L Ed 769 (1875); *see also* George Coggins and Robert Glicksman, 1 *Public Natural Resources Law* § 1.02[1][e], 1-14 (1995); Ernest Baynard III, *Public Land Law and Procedure* §§ 1.1, 1.2, 2-3 (1986). Under that definition, land subject to any claim by a third party was not considered "public land." Baynard, *Public Land Law and Procedure* § 1.1 at 2. Because virtually all federal lands are now withdrawn and reserved, however, the common law definition is considered "obsolete." Coggins and Glicksman,

*Public Natural Resources Law* § 1.02[1][e] at 1-15. It has, in this century, largely been superseded by statutory definitions, which generally define the term to include all land owned by the United States. *Id.* Most significantly, the Federal Land Policy and Management Act, 43 USC § 1702(e) (1982), defines "public lands" broadly to mean "any land and interest in land owned by the United States."

In that context, the significance of the dictionary definitions on which the parties rely becomes apparent. Defendant's proffered definition of "public lands" from an early edition of *Black's Law Dictionary*, not surprisingly, refers to the common law conception of the term. The more recent definition in *Webster's* on which the state relies refers to the more contemporary, and broader, definition.

The question remains which, if either, of the definitions the Oregon legislature intended when it used the term "public lands." The term appears in the Oregon Revised Statutes some 600 times. In each case, there is no suggestion that the legislature intended to adopt the more restrictive common law definition; to the contrary, there is every indication that the legislature intended to adopt a general definition of "public lands" to mean any land owned by a government.

Title 25 of the Oregon Revised Statutes, for example, relating to "public lands," contains an entire chapter, ORS chapter 272, devoted to acquisition of title to real property in Oregon by the federal government. There is no mention of a qualification that, if any interest is conveyed to others, the property ceases to be "public," for the purposes of Oregon law. ORS 273.006(7), relating generally to the regulation of state lands, similarly defines "public lands" as "any land or improvements thereon owned by the State of Oregon or any agency thereof." There is no suggestion that, if those lands are subject to a permit or reservation to private parties, they are no longer "public." Indeed, the chapter expressly authorizes timber sales, ORS 273.521, drilling leases, ORS 273.551, railroad rights-of-way, ORS 273.751, and geothermal resource rights, ORS 273.775, on "public lands" without jeopardizing the "public" nature of the property. ORS 758.215(6) defines "public lands and rights-of-way" to include "all land or interest in land owned by a public authority." ORS 526.801(5) defines the term to mean "lands owned

by the State of Oregon or by any other political subdivision."
ORS 358.905(1)(j) defines it to mean "any lands owned by the
State of Oregon, a city, county, district or municipal or public
corporation in Oregon."

Those definitions are, in all material respects, identical. They strongly suggest that, whenever the legislature uses
the term "public lands," it means the same thing: land owned
by a unit of government. None of the foregoing definitions
suggests that the term is to be more narrowly defined as land
that is alienable by the government without restriction or
reservation, as under the common law. It does not *necessarily*
follow, however, that the legislature intended the reference to
"public lands" in ORS 475.996(1)(b)(I) to have the same
meaning as the term does in other statutes. Accordingly, we
examine the legislative history.

Unfortunately, our examination of the legislative
history sheds no light on the matter. It reveals generally that
the purpose of ORS 475.996 was to increase penalties for
commercial drug offenses and to provide objective criteria for
determining what constitutes a "commercial drug offense."
Tape recording, Senate Judiciary Committee, HB 2390, May
24, 1991, Tape 187, Side A; Minutes, House Judiciary Crime
and Corrections Subcommittee, HB 2390, January 30, 1991,
pp 1-7, and February 20, 1991, pp 1-5; Minutes, House
Judiciary Full Committee, HB 2390, March 8, 1991, pp 3-4;
Tape recording, Senate Judiciary Committee, HB 2390, May
24, 1991, Tape 187, Side A at 131-end. There is no mention of
the specific factor of "using public lands," nor explanation of
why it was included or what it was intended to mean.

We turn, therefore, to relevant maxims of statutory
construction. Particularly relevant to this case is the maxim
that in the absence of evidence to the contrary, we may
assume that the legislature intends words to be used consistently. *See, e.g., Columbia Steel Castings Co. v. City of Portland,* 314 Or 424, 430, 840 P2d 71 (1992); *Knapp v. City of
North Bend,* 304 Or 34, 41, 741 P2d 505 (1987).

In this case, there is no evidence that the legislature
intended the term "public lands" to mean something different from what it has defined the term to mean in other
statutes. To the contrary, the fact that the legislature has

expressly defined the term so consistently throughout the Oregon Revised Statutes buttresses the assumption that it intended the same definition to apply in ORS 475.996-(1)(b)(I). We conclude that the trial court correctly construed the reference to "public lands" in ORS 475.996(1)(b)(I) to refer to land owned by a unit of government. Defendant's argument that he did not use "public lands" in growing marijuana, therefore, is incorrect.

Affirmed.