Argued and submitted September 8, 2004, reversed March 16, 2005

# LILLY COURT LLC,
*Respondent,*

*v.*

# David LEE
# and Sharon Beach,
*Appellants.*

## 03CV0258; A122367

108 P3d 642

David S. Tilton argued the cause and filed the briefs for appellants.

Jesse C. Margolis argued the cause for respondent. With him on the brief was Olin & Margolis, P.C.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Arnold, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

The principal issue in this case is whether plaintiff, the owner of a mobile home park, waived the right to seek the eviction of defendants because it "accept[ed] rent" with knowledge that defendants had defaulted on their rental agreement when it retained several rent checks but did not cash them. The trial court concluded that there was no waiver because defendants' tender of payment by personal check did not amount to payment of "rent," whether or not it had been "accepted." We conclude that, when plaintiff retained the checks, it waived the right to seek eviction. We therefore reverse.

The trial court made detailed findings of fact, which the parties do not dispute. According to those findings, plaintiff rents space in its mobile home park to defendants. Defendant Lee is a widower with several minor children. He lives with defendant Beach, who has a minor son, in a mobile home located in the rented space. Both defendants signed a rental agreement, which included provisions requiring defendants to abide by certain park rules, among them that tenants not trespass onto other tenants' properties or cause unreasonable noise. The rental agreement also includes a provision concerning the payment of rent; as pertinent to this case, the agreement expressly provides for payment to be made by "check."

Defendants' children were an unruly bunch, given to trespassing on other tenants' spaces, riding their bikes over flower beds and grass, and making unreasonable noise, particularly during what the park rules refer to as evening "quiet time." In June and July of 2002, plaintiff issued a total of eight notices of disturbance to defendants related to the children's behavior. In July of that year, plaintiff even had its attorney prepare a notice of eviction. Apparently, defendants took corrective action, because no eviction proceedings followed.

On January 27, 2003, however, plaintiff served defendants with a second eviction notice, again citing as grounds trespasses by defendants' children that had occurred during the previous month and complaints of unreasonable

noise arising out of a four-day-long party that had occurred in mid-January. According to the terms of the eviction notice, defendants were to vacate the premises by March 3, 2003.

Defendants, however, did not leave. Instead, they continued sending rent checks to plaintiff for the months of February, March, and April 2003. Plaintiff cashed the February check. It then retained the March and April checks, but it did not cash them. In a letter dated March 24, 2003, plaintiff's lawyer advised defendants that plaintiff would not negotiate the March check until the resolution of the dispute between the parties. The letter stated that "[m]y client probably has authority to cash that check, but is understandably reluctant to do so without confirmation that cashing the check would not prejudice my client's rights to enforce the Notice to Vacate for Cause."

On April 14, 2003, plaintiff initiated this action for forcible entry and detainer. Defendants answered, arguing that—among other things—plaintiff had waived its right to terminate the lease by accepting rent from them for the months of February, March, and April.

At trial, defendants asserted their waiver defense. Plaintiff responded that it had not waived anything because it had not "accepted" rent, having refrained from cashing defendants' rent checks for March and April. In any event, plaintiff argued, retaining the checks cannot amount to waiver because payment by check is not the actual payment of rent. In the alternative, plaintiff argued that, even if retaining checks otherwise could amount to waiver, in this case it did not because the parties agreed that acceptance of the rent did not constitute a waiver. Finally, and again in the alternative, plaintiff argued that, even if retaining checks otherwise could amount to waiver, retaining them did not have that effect in this case because plaintiff is subject to a statutory exception to waiver based on the recurrence of conduct in violation of prior notices of disturbance.

The trial court concluded that plaintiff did not waive the right to seek eviction by retaining the proffered rent checks because payment by personal check is "not legal tender." According to the trial court, while cash or a bearer bond constitutes legal tender, a personal check does not

because the issuer of the check can stop payment on it and a bank can refuse to honor it under certain circumstances. The trial court concluded that defendants' record of disturbances established legitimate grounds for eviction and entered judgment to that effect.

On appeal, defendants argue that the trial court erred in concluding that plaintiff's retention of their rent checks did not amount to a waiver of the right to seek eviction. Defendants argue that, in ordinary parlance, payment of rent by personal check is in fact lawful payment. They point out that the rental agreement itself expressly allows payment of rent by personal check. By retaining the checks and not returning them, defendants argue, plaintiff accepted them and thereby waived the right to seek eviction. In response, plaintiff reiterates the several alternative arguments that it advanced to the trial court in support of its contention that there has been no waiver of a right to seek eviction.

Whether plaintiff waived the right to seek eviction by retaining defendants' rent checks is controlled by ORS 90.415, which provides, in part:

"(1) Except as otherwise provided in this section, a landlord waives the right to terminate a rental agreement for a particular breach if the landlord:

"(a) During two or more separate rental periods, accepts rent with knowledge of the default by the tenant; or

"(b) Accepts performance by a tenant that varies from the terms of the rental agreement.

"(2) For purposes of subsection (1)(a) of this section, a landlord has not accepted rent if within six days after receipt of the rent payment, the landlord refunds the rent."

In this case, there is no debate that plaintiff retained at least two of the checks with knowledge of defendants' default. The issue is whether retaining those checks amounts to "accept[ing] rent" within the meaning of the statute. That is a matter of statutory construction, which we resolve by reference to the interpretive method described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143

(1993). Under *PGE*, we attempt to determine the legislature's intended meaning of the statute by examining the text of the statute in its context and, if necessary, by examining legislative history and other aids to construction. *Id.*

■ ■ We begin with whether the personal checks that defendants sent to plaintiff were "rent" within the meaning of the statute.[1] The term "rent" is defined by the Residential Landlord and Tenant Act to mean "any payment to be made to the landlord under the rental agreement, periodic or otherwise, in exchange for the right of a tenant and any permitted pet to occupy a dwelling unit[.]" ORS 90.100(32). In this case, the rental agreement expressly contemplates payment to be made by check. The checks therefore were "rent" within the meaning of the statute.

■ We turn to whether, by retaining the rent checks, plaintiff "accept[ed]" them. In ordinary discourse, the verb "to accept" means "to receive with consent (something given or offered) ‹ ˜ ed the medal › : assent to the receipt of ‹ ˜ ed lower wages than the native workers ›." *Webster's Third New Int'l Dictionary* 10 (unabridged ed 2002). Certainly, in retaining defendants' checks, plaintiff "accepted" them in the ordinary meaning of the term; it received with consent the checks that defendants offered.

■ The meaning of statutory terms, however, is not determined by mere reference to dictionaries. We must examine the manner in which the terms are used by the legislature to determine whether it intended to depart from the ordinary meaning of the terms that it employed. *State v. Holloway*, 138 Or App 260, 265, 908 P2d 324 (1995). After examining the relevant statutes, we find no evidence that the legislature used the term in any sense other than its ordinary one.

---

[1] The parties and the trial court focused on the question whether the personal checks amounted to legal "tender." "Tender," however, is not the term used in the statute. In any event, a personal check is usually regarded as tender. *See* ORS 81.010 ("An offer in writing to pay a particular sum of money or to deliver a written instrument or specific personal property is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."); *see also Wiper v. Fawkes*, 198 Or App 331, 334, 109 P3d 798 (2005) (tender of corporate check was valid under contract requiring payment "in lawful tender").

Plaintiff insists that, even if the legislature intended the term "accepted" to be used in its ordinary sense, plaintiff's conditional retention of the checks does not amount to acceptance. In making that argument, plaintiff places special reliance on its March 24, 2004, letter notifying defendants that it intended to retain the March check, and not cash it, until their dispute had been resolved.

Defendants respond that the statute expressly contemplates how a landlord may respond to checks that are sent but not wanted: Under ORS 90.415(2), the landlord may signify its refusal to accept rent by returning it within six days. In this case, defendants note, plaintiff did not do that. Instead, plaintiff attempted to have it both ways. It attempted to avoid clearly waiving its right by cashing the checks while, at the same time, it retained the checks so that it had them in its possession should things not work out in its favor. The law, argue defendants, does not permit that.

We agree with defendants. The statute clearly sets out what the legislature intended to be the way to avoid a waiver should a tenant send unwanted rent—send the rent back to the tenant within six days. There would seem to be no other purpose to setting the six-day time limit on the ability to return the rent. In fact, plaintiff's only argument concerning ORS 90.415(2) is that "[r]efund was not necessary because rent was not accepted and Plaintiff did not have Defendants' money; Plaintiff had a check." That, however, is merely a repetition of plaintiff's argument that a check is not rent, an argument that we have rejected.

In any event, plaintiff's March 24, 2003, letter cannot reasonably be described as a refusal to accept defendants' rent. The letter stated that plaintiff, in fact, probably had the right to cash the check but that plaintiff was "reluctant" to do so for fear of prejudicing its attempt to evict defendants. Plaintiff was indeed attempting to have it both ways, akin to a party attempting to rescind a contract while simultaneously attempting to enforce it. *See Mascall v. Erikson*, 131 Or 509, 515, 283 P 2 (1930) ("A party can not affirm a contract in part and repudiate it in part. He can not accept the benefits on the one hand while he shirks its disadvantages on the other.").

Plaintiff argues that, even if its acceptance of rent otherwise would constitute a waiver, it does not in this case for either of two reasons—first, because the parties agreed that the acceptance of rent would not operate as a waiver and, second, because ORS 90.415(5) provides an exception to the statutory waiver provision in cases involving rented space for manufactured homes in which there is a "continuous or ongoing breach or default."

As to the first argument, plaintiff has failed to direct us to any evidence in the record that would support the conclusion that defendants had agreed that plaintiff's acceptance of the rent would not amount to a waiver of its right to terminate the rental agreement. We reject that argument without further discussion.

■ The second argument requires a bit more discussion. ORS 90.415(5) provides, in part:

> "If a tenancy consists of rented space for a manufactured dwelling * * * a landlord does not waive the right to terminate as described in subsection (1) of this section if:

> "* * * * *

> "(b) The breach or default at issue concerns the tenant's conduct and, following the breach or default, but prior to acceptance of rent * * * the landlord gives written notice to the tenant regarding the breach or default that:

> "(A) Describes specifically the conduct that constitutes the breach or default * * *;

> "(B) States that the tenant is required to discontinue the conduct or correct the breach or default; and

> "(C) States that a reoccurrence of the conduct that constitutes a breach or default may result in a termination of the tenancy pursuant to ORS 90.630. For a continuous or ongoing breach or default, the landlord's notice remains effective for 12 months."

Plaintiff's argument is that the exception to waiver described in the foregoing statute applies because (1) this case involves a "rented space for a manufactured dwelling"; (2) plaintiff gave prior written notice of the breach when it issued the July 31, 2002, notice of eviction; (3) the notice stated that

defendants were required to discontinue their conduct; (4) the notice stated that a reoccurrence of the conduct that constituted the breach could result in termination; and (5) that notice remained effective for 12 months.

Defendants contend, however, that plaintiff's argument ignores the fact that the statute provides that a notice of breach or default remains effective for 12 months only if it involves "a continuous or ongoing breach or default." In this case, defendants argue, there is no evidence of such continuous or ongoing breach or default.

We agree with defendants. The exception to the waiver provision applies when a landlord continues to accept rent after having issued notice that further breach or default may result in termination of the tenancy. The key is that the acceptance of the rent must follow the issuance of written notice containing all the requisite information. In this case, plaintiff relies on the July 31, 2002, notice, which contains all the information that the statute requires. But if the notice is no longer effective when a landlord accepts rent, the exception in ORS 90.415(5) no longer applies. Thus, the determinative issue in this case is whether the July 31, 2002, notice remained in effect in the spring of 2003, when plaintiff accepted defendants' rent checks.

ORS 90.415(5)(b)(C) provides that a notice is effective for 12 months if it involves "a continuous or ongoing breach or default." Ordinarily, "continuous" conduct is "characterized by uninterrupted extension in time or sequence" and "continuing without intermission or recurring regularly after minute interruptions." *Webster's* at 494. Similarly, "ongoing" conduct ordinarily refers to conduct "that is actually in process * * * continuously moving forward." *Id.* at 1576.[2]

---

[2] Although no one has suggested that the statute is ambiguous in that regard, it is interesting to note that the legislative history confirms that the ordinary meaning of the terms was intended. The relevant provisions of what is now ORS 90.415 were drafted by a coalition of representatives of landlord and tenant interest groups. The principal drafter was John VanLandingham, who, in a statement to the House Rules, Redistricting and Public Affairs Committee that held hearings on the proposal, explained that notices are effective for 12 months if "continuous and ongoing." As an example, VanLandingham offered "having a prohibited pet; the pet's presence is not a one-time breach, but rather a breach that continues over time." Testimony, House Rules, Redistricting and Public Affairs Committee, SB 194A, May 23, 2001 (statement of John VanLandingham).

There is no evidence of such a continuous and ongoing breach in this case. The July 31, 2002, notice identified a number of specific incidents as grounds for eviction. As we noted, defendants remedied those specific problems, and plaintiff decided not to pursue the eviction. Although some months later, plaintiff again decided to seek eviction, there is no evidence that defendants' conduct continued uninterrupted, or even regularly with minor interruptions, during the intervening months. We therefore reject plaintiff's reliance on the July 31, 2002, notice as the basis for avoiding its waiver of the right to terminate the tenancy after accepting defendants' rent checks in February, March, and April 2003.

Plaintiff advances other arguments as well, which we reject without discussion.

Reversed.