Argued and submitted November 17, 2006, reversed and remanded May 30, 2007

Laura Vanini GROBOVSKY, M.D.,
*Petitioner,*

*v.*

BOARD OF MEDICAL EXAMINERS,
*Respondent.*

Board of Medical Examiners
034006; A129438

159 P3d 1245

Christopher L. Cauble argued the cause for petitioner. With him on the brief was Cauble, Dole & Sorenson.

Richard D. Wasserman, Attorney-in-Charge, Civil/ Administrative Appeals Unit, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.*

* Rosenblum, J., *vice* Linder, J.

BREWER, C. J.

## BREWER, C. J.

Petitioner, an oncologist, seeks review of a final order that the Board of Medical Examiners (the board) issued after a contested case hearing. The board suspended petitioner's license to practice medicine and imposed other sanctions because of her refusal to comply with the board's previous order that she undergo an evaluation for possible alcohol abuse (the evaluation order). We conclude that the board erred by not permitting petitioner to defend against the charges in the contested case hearing by challenging the basis for the evaluation order. We therefore reverse the board's final order.

We take the following facts from the board's final order and from the record in the case. In 2003, petitioner was licensed to practice medicine in California, Tennessee, and Oregon, and she was practicing at Oncology of Southern Oregon (OSO) in Medford. On two separate occasions in September 2003, some of petitioner's colleagues noticed that she had a strong odor of what they suspected was alcohol on her breath while at work. On the first occasion, she also appeared to have trouble concentrating and staying awake. On November 7, 2003, after the board became aware of those suspicions, it ordered petitioner to undergo "an independent, multidisciplinary evaluation to assess her physical and mental capacity to safely and competently practice medicine." The board required that the evaluation occur at a health care facility that the board's medical director approved, that the evaluating facility provide a report directly to the board within 60 days of the date of the order, and that petitioner sign releases to authorize communication between the board and the evaluators. The board also required petitioner to pay the cost of the evaluation.

On December 27, 2003, petitioner sent the board a letter in which she stated that she would not renew her Oregon medical license and that she did not intend to undergo the required evaluation. She moved to Tennessee and voluntarily underwent an evaluation at a facility in that state beginning on September 30, 2004. That evaluation occurred more than 60 days after the date of the board's evaluation order, and petitioner did not seek approval from the

board's medical director for either the evaluation or the facility. In its final order, the board described various aspects of the Tennessee evaluation that, the board concluded, made it inadequate to satisfy the substantive requirements of the evaluation order.

On May 5, 2004, the board filed a complaint against petitioner. The complaint stated the charges against her in two paragraphs. In the first paragraph, the board alleged that, on September 5, 2003, petitioner possibly was impaired while on duty by her consumption of alcohol the previous night and that, although she had promised not to drink alcohol again, on September 26, 2003, she again had a strong odor of alcohol on her person. In the second paragraph, the board alleged that, after having received credible information about the September incidents, it had asked petitioner voluntarily to undergo a multidisciplinary evaluation to determine her fitness to practice medicine; that after petitioner refused to do so, the board ordered her to undergo the evaluation; and that petitioner failed to comply with that order and, instead, sent the board a letter stating that she did not want to hold an Oregon license and had not bothered to renew it. Based on the facts alleged in the complaint, the board proposed to take disciplinary action against petitioner for violations of ORS 677.190(1)(a), which prohibits unprofessional or dishonorable conduct, and ORS 677.190(18), which prohibits willfully violating any board order.

Petitioner intended to defend against the board's charges in part by attacking the factual basis behind the assertion that she was impaired while on duty by her use of alcohol. In preparation for the hearing, petitioner served a subpoena *duces tecum* on OSO seeking, among other things, all documents or other information concerning allegations that she was under the influence of intoxicants while at work. OSO moved to quash the subpoena on the ground that the sole issue in the case was whether petitioner had complied with the board's evaluation order, not whether she actually was impaired. For that reason, OSO stated, the documents that the subpoena sought were irrelevant. During a hearing on the motion to quash before the administrative law judge (ALJ) assigned to the case, the board's counsel stated that the board was not seeking to discipline petitioner for having been

under the influence of intoxicants. Rather, counsel stated, the sole issue was whether petitioner had failed to comply with the evaluation order. The board's counsel also argued that petitioner's attempt to challenge the validity of the complaints constituted an untimely collateral attack on that order. Because, according to counsel, the evaluation order was a final order in other than a contested case, petitioner had to seek judicial review of it in circuit court under ORS 183.484, and the time for her to do so had passed.

The ALJ accepted the board's limitation of the issues at the hearing to whether petitioner willfully had failed to comply with the evaluation order and whether that failure constituted a disciplinary violation. The ALJ also agreed that the evaluation order was an order in other than a contested case and that petitioner could not challenge it in the contested case hearing because she had failed to seek judicial review of the order.[1] For those reasons, the ALJ granted OSO's motion to quash the subpoena.

The ALJ thereafter conducted a contested case hearing in which the issues were limited in accordance with the order on the motion to quash. After the hearing, the ALJ issued a proposed order in which she found that petitioner had failed to obey the board's evaluation order and that she thereby had violated ORS 677.190(1) and (18). Because petitioner no longer was licensed to practice medicine in Oregon, the ALJ concluded that the board did not have the authority to suspend her license and, instead, proposed other sanctions.

After considering petitioner's exceptions to the proposed order, the board issued a final order that followed the proposed order in most respects. The board expressly agreed with the ALJ that the issues at the hearing were limited to whether petitioner had complied with the board's evaluation order and that petitioner was barred from attacking that order at the hearing because she had failed to seek judicial review of it under ORS 183.484. However, the board disagreed with the ALJ's conclusion that it had no authority to

---

[1] The ALJ did not state that the evaluation order was a final order, but in her decision she apparently treated it as one.

suspend petitioner's license once it had expired, quoting a statute that the board believed authorized it to do so. The board therefore imposed sanctions that included a suspension. Petitioner now seeks judicial review of the board's final order.

Petitioner first assigns error to the board's refusal to permit her to challenge the allegations that she had abused alcohol and the underlying basis for the evaluation order. She argues that the board thereby exceeded the scope of its authority and violated her constitutionally guaranteed right to due process. There are two aspects to petitioner's arguments in support of this assignment of error. Petitioner initially observes that the first charging paragraph in the board's complaint described two instances in which she allegedly was under the influence of alcohol while at work, while the second paragraph described her alleged failure to undergo the alcohol evaluation that the board ordered. Petitioner treats each paragraph as setting forth a separate charge, with the first paragraph charging her with being under the influence of alcohol. Based on that reading of the complaint, petitioner argues that the board refused to allow her to defend against the charges in the first paragraph.

Petitioner's argument might well be correct if the record were limited to the complaint itself. The allegations of the first charging paragraph could support a charge that petitioner violated ORS 677.190(1)(a), which prohibits unprofessional or dishonorable conduct, including any "conduct, practice or condition" that might impair a physician's "ability safely and skillfully to practice medicine[.]" ORS 677.188(4)(a). Evidence that a physician used alcohol excessively or was under its influence while at work could tend to prove that the physician had violated that statute. The complaint nevertheless is somewhat ambiguous with respect to the nature of the charges. The first charging paragraph states only that petitioner was "possibly impaired," not that she actually was impaired, and the complaint does not charge that petitioner violated ORS 677.190(7), which expressly prohibits habitual or excessive use of intoxicants. What is decisive, however, is that the board expressly limited the scope of the charges, and the ALJ proceeded in accordance with that limitation. At the hearing on OSO's motion to quash, the

board stated that it was not charging that petitioner actually was intoxicated but only that she had failed to comply with the evaluation order. The board explained that the statements in the first charging paragraph concerning what OSO staff observed merely amounted to a description, for purposes of background, of the basis for the order. In her order granting OSO's motion to quash, the ALJ accepted the board's construction of the charges and limited the scope of the hearing to whether petitioner willfully had failed to comply with an order of the board and whether that failure constituted unprofessional or dishonorable conduct. Because of that limitation of the issues at the hearing, petitioner's first argument fails. As the case was tried, the board did not charge her with abusing alcohol, and it thus did not deny her the ability to defend against that charge.

■        Petitioner's second argument is that the board erred in treating the evaluation order as a final order in other than a contested case and therefore erred in refusing to permit her to challenge it in the contested case proceeding. If the board's description of the order were correct, under ORS 183.484, petitioner would have had 60 days after the board issued the order to petition for review in circuit court, something that she did not do. However, as we now explain, we conclude that the board's description is erroneous; the evaluation order was not a final order, and petitioner's failure to seek review of the order in accordance with ORS 183.484 did not preclude her from challenging its basis as part of her defense to the charges in this contested case.

The Administrative Procedures Act distinguishes between an "order" and a "final order." An "order" is "any agency action expressed orally or in writing directed to a named person or named persons" other than agency employees. ORS 183.310(6)(a). The evaluation order satisfies that definition. However, although a person may challenge an order that is not final on limited grounds by a separate judicial action, *see* ORS 183.480(3), only a "final order" is subject to judicial review, ORS 183.480(1). *Oregon Health Care Assn. v. Health Div.*, 329 Or 480, 992 P2d 434 (1999). To constitute a final order, the evaluation order must satisfy the definition of ORS 183.310(6)(b):

" 'Final order' means final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:

"(A)   Precedes final agency action; or

"(B)   Does not preclude further agency consideration of the subject matter of the statement or declaration."

Thus, a final order expresses final agency action and is in writing. A final order is neither tentative nor preliminary but is the complete statement of the agency's decision on the matter before it. ORS 183.310(6)(b)(A) and (B) describe characteristics that indicate that a written order is tentative or preliminary and thus is not a final order. As we recently explained, under the statutory definition, an order is not final if it *either* precedes final agency action *or* does not preclude further agency consideration of the subject matter of the agency statement. *Hawes v. DEQ*, 203 Or App 255, 264-65, 125 P3d 778 (2005). Because the evaluation order in this case did not preclude further agency consideration of petitioner's condition, we do not need to consider whether it preceded final agency action.

■    In a sense, every order is final as to the specific subject that it covers; for example, even an order postponing a hearing is final as to whether the hearing will occur on the original date. However, that does not mean that every order is final under ORS 183.310(6)(b). Rather, the question is the order's place in the process of which it is a part—whether it is a preliminary step in reaching some later decision or is, itself, the ultimate decision. Thus, whether an agency's order is final for the purpose of judicial review depends on the context of the regulatory scheme within which the agency issued the order. *See Teel Irrigation Dist. v. Water Resources Dept.*, 323 Or 663, 675-77, 919 P2d 1172 (1996); *Oregon Restaurant Services v. Oregon State Lottery*, 199 Or App 545, 556, 112 P3d 398, *rev den*, 339 Or 406 (2005). To ascertain whether the evaluation order was a final order, we must first describe the regulatory context within which the board acted.

When the board ordered petitioner to undergo an evaluation, it apparently relied on its authority under ORS 677.420(2):

> "If the board has reasonable cause to believe that any licensee is or may be unable to practice medicine or podiatry with reasonable skill and safety to patients, the board shall cause a competency examination of such licensee for purposes of determining the fitness of the licensee to practice medicine or podiatry with reasonable skill and safety to patients."[2]

That authority implements the board's responsibility under ORS 677.415(2) to investigate "any evidence that appears to show that a licensee licensed by the board is or may be medically incompetent or is or may be guilty of unprofessional or dishonorable conduct or is or may be an impaired licensee unable safely to engage in the practice of medicine or podiatry."

In its final order in the contested case, the board treated its authority to investigate licensees as part of a different scheme from its authority to discipline them. For that reason, according to the board, an order that it issues as part of an investigation is final as to that aspect of the investigation. As it explained in the final order in the contested case:

> "In her exceptions, [petitioner] contends that the Order for Evaluation 'was only a first step in the disciplinary process.' But this assertion highlights a misunderstanding of the process. Orders for evaluation are designed to determine or rule out a diagnosis. Discipline is not the inevitable result of complying with a board ordered evaluation. Sometimes an evaluation rules out a diagnosis for chemical abuse or dependence, or is inconclusive. Even when an evaluation concludes that a licensee is chemically dependent, the usual course is for a licensee to go into treatment and enroll in the Board's diversion program—sometimes without disciplinary action being imposed."

---

[2] In the evaluation order, the board cited ORS 677.420 as its authority, but it did not state the subsection on which it relied. ORS 677.420(1) authorizes the board to require a "mental, physical or medical competency" examination "at any time," while ORS 677.420(2) authorizes the board to require an examination for fitness to practice if it "has reasonable cause to believe" that the licensee is unable to practice with reasonable skill and safety to patients. Because the examination that the board ordered relates to petitioner's ability to practice with reasonable safety and skill to patients rather than to her competence as a physician, it appears to be based on ORS 677.420(2).

The board's explanation shows that the evaluation order was not a final order because it was preliminary to a subsequent decision. According to that explanation, even if the board's investigatory and disciplinary functions are not part of the same scheme, the evaluation order did not preclude further board action.

According to the board, the purpose of the evaluation was to "determine or rule out a diagnosis." One purpose of a medical diagnosis is to determine the nature of a person's condition in order to decide what, if any, treatment to provide. The board's explanation indicates that it intended to take further action after the evaluation and that the nature of that further action would depend on what the evaluation revealed. The board stated that, if the evaluation showed dependence, it would, at the least, require petitioner to undertake treatment and enroll in a diversion program under ORS 677.645; even then, she also might be subject to disciplinary action. If the evaluation showed that petitioner was not dependent, the board might decide to take no further action—a decision that, itself, would constitute a board action based on the result of the evaluation. Thus, the board itself regarded the evaluation as preliminary to—and a predicate for—some subsequent board action.

Specifically, under ORS 677.420(2), the evaluation was part of the board's investigation to determine whether petitioner was able to practice medicine "with reasonable skill and safety to patients." Whether or not investigation and discipline are part of the same regulatory scheme, a specific investigatory tool, such as a compelled evaluation, is merely part of the investigatory process. According to the board's own analysis, the evaluation order did not preclude the board from further consideration of the subject matter of the evaluation; indeed, further board consideration was a certainty.

An order for an evaluation is only one of a number of investigatory tools at the board's disposal for collecting evidence about licensees in order to implement its authority to investigate them for violations of ORS chapter 677. ORS 677.320(1). In addition to a compelled evaluation, the board

may use depositions, ORS 677.320(2)(b); compel the appearance of witnesses, including the licensee, ORS 677.320(2)(c); compel answers to interrogatories, ORS 677.320(2)(d); compel the production of documents and testimony, ORS 677.320(2)(e); and compel an informal interview with the licensee, ORS 677.415(7). *See Anderson v. Board of Medical Examiners*, 95 Or App 676, 770 P2d 947, *rev den*, 308 Or 608 (1989) (discussing compelled informal interview).[3] The board may enforce its subpoenas and other orders against licensees in court by proceedings for contempt. *See* ORS 677.270.[4] Under the board's analysis, each of those investigatory tools, itself, would be a final order in other than a contested case because each would be final as to its subject matter, which the board regards as limited to requiring the licensee to provide the designated information. Again, that analysis ignores that the board seeks information for a broader purpose, that is, to decide whether to take action concerning the licensee. The board has authority to investigate in order to implement its decision-making powers, not simply in order to investigate. It follows that, under ORS 183.310(6)(b)(B), the evaluation order was not a final order.

The question remains whether petitioner may challenge the validity of the evaluation order in the course of defending against the board's charge that she failed to comply with that order. The parties do not address the question of when she could do so if the evaluation order was not a final order subject to immediate judicial review. For that reason, we do not decide the issue at this time. We note that the board did not seek to enforce the order by a proceeding for contempt, as it could have done under ORS 677.270, and petitioner did not attempt to enjoin the board's action on the ground that it was proceeding without probable cause. *See* ORS 183.480(3); *Brian v. Oregon Government Ethics Commission*, 320 Or 676, 891 P2d 649 (1995). Thus, there

---

[3] An order for a compelled interview appears to be comparable to an order for an evaluation; we previously have assumed that such an order is not a reviewable final order. *See Anderson*, 95 Or App at 679 (if, as petitioner argued, purpose of interview turned out to be contested case, petitioner could obtain redress by assigning error to the interview proceeding after board issued reviewable order).

[4] The board's authority to enforce investigatory subpoenas and other orders is in addition to its general authority to enforce subpoenas in contested cases under ORS 183.440(2). *See* ORS 677.265(10).

was no actual proceeding before the contested case hearing in which petitioner could have challenged the order. That circumstance might suggest that petitioner could challenge the order at the hearing. *Cf. State v. Crenshaw*, 307 Or 160, 167-68, 764 P2d 1372 (1988) (a defendant may challenge underlying order on appeal from contempt judgment when there is no other practical way to do so); *School Dist. No. 1 v. Nilsen*, 7 Or App 396, 410, 490 P2d 1265 (1971), *rev'd on other grounds*, 262 Or 559, 499 P2d 1309 (1972) (refusing to obey subpoena in order to force agency to seek judicial enforcement through contempt is appropriate method of challenging subpoena). On the other hand, petitioner's failure to file a judicial challenge to the order under ORS 183.480(3), if such a challenge was possible under the statutory requirements, might be relevant to her ability to challenge the order at the hearing.

It is clear that the board's refusal to permit petitioner to challenge the validity of the evaluation order on the ground that the order was a final order in other than a contested case was erroneous and requires reversal of its final order issued after the hearing. Other issues concerning petitioner's ability to challenge the order at the hearing, and the validity of the order, if she can challenge it, are for the board to address on remand. We turn to the remaining assignments of error, which we discuss to the extent that they involve issues that may arise on remand.

In her second assignment of error, petitioner argues that the board does not have the authority to discipline her because she is no longer a licensee. She relies on *Schurman v. Bureau of Labor*, 36 Or App 841, 585 P2d 758 (1978), in which we held that the agency had no authority to revoke the license of an employment agency after the license had expired. However, as the board pointed out in its order, ORS 677.175(3) leads to a different conclusion in this case. That statute provides that, "[t]he surrender, retirement or other forfeiture, expiration or cancellation of a license issued by the board shall not deprive the board of its authority to institute or continue a disciplinary action against the licensee upon any ground provided by law." There was no comparable statute in *Schurman*, so that case is not controlling here. Rather, the legislature expressly has given the board authority to

impose discipline on a licensee or former licensee in these circumstances.

In her third assignment of error, petitioner argues that there is not substantial evidence in the record to support the board's finding that she willfully failed to comply with the evaluation order, thus violating ORS 677.190(18). Although petitioner frames this assignment as a substantial evidence challenge, the arguments that she makes in support of it generally raise legal issues, and we will therefore evaluate them in that light.

Petitioner first argues that the board failed to permit her to present evidence to refute what she sees as the underlying allegation that she was under the influence of alcohol. She argues that the Tennessee evaluation that she underwent concluded that she did not have an alcohol problem and was not impaired. That argument is based on a misunderstanding of the purpose of the evaluation and of the board's authority to order it. In addition, petitioner does not respond to the board's explanation in its final order of its reasons for rejecting the conclusions of the Tennessee evaluation. ORS 677.420(2) authorizes the board to order an examination if "the board has reasonable cause to believe that any licensee is or may be unable to practice medicine or podiatry with reasonable skill and safety to patients[.]" The evaluation is part of the board's investigation to determine whether the physician is impaired; its purpose is to help the board make that determination. The board does not need to prove impairment as a prerequisite for ordering an examination as part of its investigation. For that reason, the statute requires only that the board have reasonable cause to believe that the licensee may be impaired before it may order an evaluation. Petitioner's evidence—that she was not in fact impaired—was therefore relevant only to the extent that it tended to show that the board lacked reasonable cause to believe that petitioner might be impaired. Because petitioner does not make or develop an argument that the board erred in failing to admit the evidence for that purpose, we do not consider it further.

Petitioner next argues that there is no evidence that she acted disrespectfully toward the board. Rather, she says,

she contested the board's findings and requested a hearing in order to challenge what she describes as "the underlying allegations of alcohol abuse." The difficulty with petitioner's argument is that the issues at the hearing, and the issues that the board decided in its final order, concerned her failure to comply with the evaluation order, not whether she abused alcohol. The evaluation order was based on the board's assertion that it had reasonable cause to believe that she might be impaired, not that it had proof that she was in fact impaired. Because the board's charges arose from petitioner's failure to undergo the required examination, the "underlying allegations of alcohol abuse" were not an issue at the hearing.

The board found that petitioner's disobedience of the evaluation order showed a lack of respect for its authority to regulate the practice of medicine in Oregon and thus demonstrated her disrespect for the board. The board also found that the purpose of the evaluation order was to determine petitioner's fitness to practice medicine in Oregon and noted that protecting the public from unqualified physicians is one of the board's primary responsibilities. For those reasons, the board concluded, petitioner's failure to comply with the order was detrimental to the public's best interests and violated ORS 677.190(1)(a). There is substantial evidence that petitioner failed to obey the evaluation order; petitioner's argument does not challenge the board's reasoning about the meaning of that failure if the order was valid.

■       Finally, petitioner argues that there is no evidence in the record that she intentionally disobeyed the evaluation order. Rather, she argues that she was simply asserting her rights to request a hearing in order to defend against the allegations against her. According to petitioner, "[i]t is not disobedience of an order to request a hearing or to defend allegations." However, the board could find from petitioner's December 2003 letter that she did not intend to undergo the evaluation that the board had ordered. She did not request a hearing in that letter but waited until the board issued its charges. The board could conclude from the December letter that her failure to undergo the evaluation was intentional. Petitioner's argument that she was seeking a hearing by disobeying the order may be relevant to the sanction that the board imposes if it again finds a disciplinary violation on

remand, but it is not relevant to whether she intentionally disobeyed the order. Her third assignment of error is otherwise without merit.

Reversed and remanded.