Argued and submitted June 15, 2010, affirmed March 23, petition for review
denied September 15, 2011 (350 Or 716)

**INBOUND, LLC,**
an Oregon limited liability company,
*Plaintiff-Respondent,*

*v.*

**DEPARTMENT OF FORESTRY,**
*Defendant-Appellant.*

Marion County Circuit Court
08C18347; A140921

252 P3d 336

Jeremy C. Rice, Assistant Attorney General, argued the
cause for appellant. With him on the briefs were John R.

Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Kevin J. Jacoby argued the cause for respondent. With him on the brief was Paul R.J. Connolly.

Before Ortega, Presiding Judge, and Rosenblum, Judge, and Landau, Judge pro tempore.*

LANDAU, J. pro tempore.

---

* Rosenblum, J., *vice* Carson, S. J.

**LANDAU, J., pro tempore**

Plaintiff entered into a contract with defendant, the Oregon Department of Forestry (ODF), to provide firefighters for one fire season, with the possibility of extensions. ODF later informed plaintiff that it would not extend the contract to another season, however, based on the fact that plaintiff's rate exceeded a previously undisclosed "price cap" for the firefighting work. Plaintiff initiated this action for breach of contract and for judicial review, contending that, among other things, ODF violated public contracting law in failing to disclose the existence of a price cap as a condition for contract renewal. Plaintiff moved for summary judgment on the claim for judicial review; ODF cross-moved for summary judgment on the same claim on the twin grounds that the petition had not been timely filed and that, in any event, ODF was not obligated to disclose the price cap. The trial court granted plaintiff's motion for summary judgment, denied ODF's, and awarded plaintiff attorney fees. ODF now appeals, arguing that the trial court erred in holding that plaintiff's claims were timely, that ODF violated the public contracting law, and that plaintiff was entitled to attorney fees. We affirm, writing only to address ODF's contention that the petition had not been timely filed.

The relevant facts are undisputed. Every year, ODF retains the services of dozens of 20-person fire-fighting crews for dispatch to wildfires on state, federal, and private lands. It uses public procurement processes to secure those firefighting services. During the relevant time period, ODF applied the procurement rules set out under the Oregon Public Contracting Code, ORS chapters 279A and 279B.

In May 2007, ODF issued a request for proposals (RFP) to procure fire crews from various contractors for the 2007 fire season. The RFP provided that the agreement would be a one-year contract, with the possibility of two one-year extensions. Along with other necessary documentation, the RFP required interested contractors to provide a price quote for the 2007 fire season, as well as price quotes for the two potential extensions covering the 2008 and 2009 fire seasons. At that time, ODF had set the maximum hourly rate for

the 2007 season at $45 per person/per hour. The RFP, however, said nothing about price caps for the 2008 and 2009 seasons, above which ODF would summarily reject the proposed extensions.

Section G of the RFP set out the provisions governing the procedure for granting extensions of the term of the agreement. Specifically, it provided:

"**G.1.1  RENEWAL NOTICE.** If ODF intends to extend the Agreement with the CONTRACTOR, ODF will notify the CONTRACTOR in writing of ODF's intent to extend the Agreement ('Renewal Notice') at least 30 (thirty) days prior to the expiration of the current term of the Agreement. If the CONTRACTOR wants to accept the extension, the CONTRACTOR must sign and return the Renewal Notice to ODF by the time specified in the Renewal Notice. If the CONTRACTOR does not return the signed Renewal Notice by the specified time, the Agreement shall expire according to its terms, unless earlier terminated.

"* * * * *

"**G.3.1**  ODF may decide, at its sole option and discretion, whether to initiate any extension of the Agreement with the CONTRACTOR under Section G.1.1. The CONTRACTOR has no entitlement to any extension of the Agreement. * * *

"**G.3.2  ONE MONTH EXTENSION OPTION.** Notwithstanding anything to the contrary in this Section G, ODF State reserves the right, to be exercised in its sole discretion to extend, at the pricing establishing for the then-current term, the Agreement for a maximum of one (1) calendar month beyond any term. ODF shall notify CONTRACTOR in writing of the one-month extension prior to the expiration of the then-current term."

(Boldface, underscoring, and capitalization in original.) Additionally, the RFP provided that either ODF or a contractor could terminate the agreement "for the convenience of the terminating party" at any time, as long as that party gave five days' notice.[1]

---

[1] Section D.10.2 of the RFP provides, "**ODF** or **CONTRACTOR** may terminate the Agreement for the convenience of the terminating party at any time by

Plaintiff submitted a proposal to ODF offering $45 per person/per hour for the 2007 season and $47.50 per person/per hour for the 2008 season (the 2009 season is not at issue in this case). In August 2007, ODF accepted plaintiff's proposal, and the parties executed the 2007 Interagency Firefighting Crew Agreement (agreement), which incorporated all of the RFP provisions, including Section G detailed above. The agreement was set to terminate on September 30, 2008, unless ODF exercised its option and offered plaintiff a one-year extension.

On January 18, 2008, ODF sent plaintiff a letter stating that, because plaintiff's hourly rate for the 2008 season exceeded $45, it was not only denying plaintiff the one-year contractual extension for the 2008 season, but also terminating the current agreement. The letter provided that the application of a $45 price cap was applied to all fire crew contracts after analysis of what price was in the "best interest[s]" of ODF and its cooperating agencies.

On February 12, 2008, ODF notified plaintiff that it was rescinding its termination and invoking the one-month extension provision under Section G.3.2 of the RFP, extending the agreement until October 31, 2008. Specifically, the letter stated:

"ODF hereby rescinds its termination of the Agreement and reinstates your company for the purposes of allowing it to provide services for the 2008 fire season. * * * The terms and conditions of the Agreement will remain in full force and effect except as follows:

"Extension of Term of Agreement: The term of the Agreement shall be extended to and include October 31, 2008."

(Underscoring in original.) The letter did not mention the potential one-year extensions provided for in Section G.1.1 of the RFP.

In April 2008, plaintiff e-mailed certain ODF employees in an attempt to ascertain the status of year-long extension awards—specifically, whether other companies

---

providing a minimum of five (5) days written notice to the other party." (Boldface in original.)

had been awarded extensions already and whether plaintiff would be awarded one as well. In one particular e-mail response, sent on May 2, 2008, Burke Mayer, a procurement officer for ODF, told plaintiff that "[d]ecisions regarding further extension of the 2007 [agreement], if any, past the October 2008 termination date ha[ve] not be[en] addressed."

On June 9, 2008, the extension agreement that reinstated the 2007 agreement and extended it until October 2008 was signed. On June 13, 2008, plaintiff received an e-mail from Steven Johnson, an ODF Compliance Specialist, which stated:

"To all Crew Contractors,

"Effective 06-13-08 the 2008 Award is done and the Award Summary Sheets are being sent by fax to each of you."

Based on ODF's denial to offer plaintiff a one-year extension, plaintiff filed its complaint for breach of contract and for judicial review on July 1, 2008.

In its judicial review claim, plaintiff asserted that ODF's fire crew procurement contracts violated ORS 279B.060(2)(h) because the RFP did not include the $45 price cap for the 2008 fire season. If it had, plaintiff argued, plaintiff could have included the $45 price cap in its proposal and, based on ODF's stated policy, plaintiff would have been awarded the 2008 extension, like other contractors whose price did not exceed the $45 cap. ODF responded that the trial court did not have jurisdiction because plaintiff's claim was untimely and that, in any event, ODF's actions did not violate the Public Contracting Code. On cross-motions for summary judgment, the trial court agreed with plaintiff that it had jurisdiction and that ODF violated ORS 279B.060(2)(h). The court remanded the issue to ODF to tailor an appropriate remedy and awarded plaintiff attorney fees as to that claim.

ODF appeals, advancing several assignments of error, of which we write only to address the first: Did the trial court lack jurisdiction because plaintiff's petition for review

was untimely? Because whether the trial court had jurisdiction is purely a legal question, we review the trial court's order for errors of law. ORS 183.500;[2] ORS 183.484(5)(a).

At trial, plaintiff invoked both the Public Contracting Code and the Administrative Procedure Act (APA) as bases for the court's subject matter jurisdiction over the petition for judicial review. As to the former, plaintiff argued that ORS 279B.420[3] granted the trial court jurisdiction to determine whether ODF violated ORS 279B.060(2)(h). In addition, plaintiff argued that the trial court properly exercised jurisdiction under the APA, ORS 183.484, because ODF's decision on June 9, 2008, to grant a one-month extension instead of a one-year extension was a final agency order, and plaintiff's complaint was filed within 60 days of that final order. The trial court agreed.

**1.** On appeal, ODF contends that neither statute confers jurisdiction over this particular case. Beginning with the Public Contracting Code, ODF contends that ORS 279B.420 does not apply; indeed, ODF argues, it is exempt from the Public Contracting Code in its entirety under ORS 279A.025(2)(m).[4] Plaintiff responds that, although ORS 279A.025(2)(m) exempts certain forestry contracts from the Public Contracting Code, elsewhere the code authorizes ODF to adopt procurement rules that are consistent with the code.

_____

[2] ORS 183.500 provides that an appeal of a circuit court judgment following judicial review of an order in other than a contested case "shall be taken in the manner provided by law for appeals from the circuit court in suits in equity." Our prior case law has interpreted that to mean that "our function is to determine whether the circuit court correctly applied the standards of its review under ORS 183.484." *Powell v. Bunn*, 185 Or App 334, 338-39, 59 P3d 559 (2002), *rev den*, 336 Or 60 (2003).

[3] ORS 279B.420(2) provides:

"If a contracting agency allegedly violates a provision of [ORS chapter 279B] * * * and a judicial remedy is not otherwise provided in this chapter or ORS chapter 279A, the alleged violation is subject to judicial review only as provided in this section."

[4] ORS 279A.025(2)(m) provides:

"The Public Contracting Code does not apply to:

"* * * * *

"(m) Contracts for forest protection or forest related activities, as described in ORS 477.406, by the State Forester or the State Board of Forestry."

In fact, plaintiff observes, ODF did just that. ODF acknowledges that it adopted the procurement provisions of the Public Contracting Code by applying those provisions when procuring contracts for fire crews. *See Burke v. Children's Services Division*, 288 Or 533, 537-38, 607 P2d 141 (1980) (holding that agency's adoption of a daycare payment program without undergoing a formal procedure did not make the rule invalid and that the "agency may not rely on its own procedural failures to avoid the necessity of compliance with its rules"). The agency argues, however, that it actually lacked the authority to do so, at least insofar as those provisions pertain to authorizing parties to obtain judicial review. In ODF's view, only the legislature may adopt statutes granting judicial review of agency action; accordingly, it could not, through its own rulemaking, adopt the judicial review procedure of the Public Contracting Code, including ORS 279B.420.

We agree with ODF. ORS 279A.025(2)(m) clearly exempts ODF from the provisions of the Public Contracting Code. Instead, ORS 477.406 requires ODF to adopt its own rules for contract procurement. Pursuant to that authority, ODF adopted the procurement procedures of the Public Contracting Code when it relied on and used those provisions in the fire crew RFP. *See Burke*, 288 Or at 537-38. But, as ODF correctly contends, there is a difference between an agency adopting rules that pertain to its own actions and operations and rules that purport to confer on the courts authority to review those actions. *See Taylor v. Board of Parole*, 200 Or App 514, 518, 115 P3d 256, *rev den*, 339 Or 475 (2005) ("The right to obtain appellate review is statutory and is subject to limitations imposed by the statute conferring the right."). Judicial review of agency action must occur through a statutory grant of jurisdiction, and, because ODF is exempt from the Public Contracting Code, that code cannot operate as a source of the court's authority to review ODF's action in this case.

■ We turn, then, to ODF's contention that the APA does not confer jurisdiction either. Jurisdiction for judicial review of orders in other than a contested case is proper when, among other things, a party files a petition for review within 60 days of a "final order." ORS 183.480 and ORS 183.484(2). A "final order"

"means final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:

"(A) Precedes final agency action; or

"(B) Does not preclude further agency consideration of the subject matter of the statement or declaration."

ORS 183.310(6)(b).

In this case, ODF contends that its January 18, 2008, letter, in which it explicitly notified plaintiff that it would not be exercising its one-year extension option, was the final order that triggered the 60-day filing deadline and that plaintiff's petition for judicial review was not filed until July 1, 2008, well after that 60-day deadline. Plaintiff responds that ODF's decision not to extend the contract was not final until June 9, 2008, the date that the one-month extension agreement was executed. That letter being the final order that is the subject of its challenge, plaintiff argues, the petition that it filed only three weeks later was timely.

In *Grobovsky v. Board of Medical Examiners*, 213 Or App 136, 143, 159 P3d 1245 (2007), this court had occasion to apply ORS 183.310(6)(b) to circumstances similar to those presented in this case. In *Grobovsky*, the petitioner was a physician licensed by the board to practice medicine in Oregon. The board received information that the petitioner may have been drinking alcohol while on duty and, on November 7, 2003, sent her a notice ordering her to undergo an evaluation within 60 days. *Id.* at 138. Six months later, the board filed a complaint against the petitioner, alleging that, as set out in its November 7 evaluation order, the petitioner had been impaired while on duty, that the board had ordered her to undergo an evaluation, and that she had failed to comply. Based on those allegations, the board proposed to take disciplinary action against the petitioner. *Id.* at 139. The petitioner attempted to defend against those charges by, among other things, challenging the allegations in the November 7 evaluation order. The board contended, and an administrative law judge agreed, that the petitioner's challenge to the November 7 evaluation order was not timely because the order was a "final order" that the petitioner had

failed to challenge within 60 days, as provided in ORS 183.484. *Id.* at 140.

On appeal, the petitioner argued that the board and the ALJ had erred in treating the November 7 evaluation as a final order. We agreed. Because this court's explanation is so instructive, we quote from it extensively:

> "[A] final order expresses final agency action and is in writing. A final order is neither tentative nor preliminary but is the complete statement of the agency's decision on the matter before it. ORS 183.310(6)(b)(A) and (B) describe characteristics that indicate that a written order is tentative or preliminary and thus is not a final order. As we recently explained, under the statutory definition, an order is not final if it *either* precedes final agency action *or* does not preclude further agency consideration of the subject matter of the agency statement. *Hawes v. DEQ*, 203 Or App 255, 264-65, 125 P3d 778 (2005). * * *
>
> "In a sense, every order is final as to the specific subject that it covers; for example, even an order postponing a hearing is final as to whether the hearing will occur on the original date. However, that does not mean that every order is final under ORS 183.310(6)(b). Rather, the question is the order's place in the process of which it is a part—whether it is a preliminary step in reaching some later decision or is, itself, the ultimate decision. Thus, whether an agency's order is final for the purpose of judicial review depends on the context of the regulatory scheme within which the agency issued the order."

*Grobovsky*, 213 Or App at 143 (emphasis in original).

The court in *Grobovsky* concluded that the November 7 evaluation was not a final order for judicial review purposes because it did not preclude further agency consideration of the subject matter. *Id.* at 146. The court noted that, according to the board's own procedures, "the evaluation order did not preclude the board from further consideration of the subject matter of the evaluation; indeed, further board consideration was a certainty." *Id.* at 145.

With the foregoing principles in mind, we turn to whether, as ODF contends, the January 18 letter to plaintiff was a final order for judicial review purposes. As we have

noted, the letter invoked ODF's contractual rights under Sections D.10.2 and G.3.1 of the RFP both to terminate the current agreement and to deny plaintiff the one-year extension of the agreement. Taken in isolation, the letter reasonably could be read as being the agency's final decision on the subject. But, as the court in *Grobovsky* cautioned, that is not the test; any order taken in isolation may look like a final agency decision. The relevant question is whether the order, considered in its context, precedes final agency action or precludes further agency consideration of the matter.

In this case, it is clear that the January 18 letter does not, by its terms, preclude further agency consideration of the matter. The letter does not say anything one way or the other about that. Moreover, and more important, three weeks later, the agency itself *did* reconsider the matter. On February 12, ODF sent plaintiff a letter that purported to "rescind[ ] its termination of the Agreement" and declared that "[t]he terms and conditions of the Agreement will remain in full force and effect * * *." Thus, by the terms of ODF's own communications with plaintiff, the agency retained the ability to exercise its contract extension rights under Section G even after the issuance of its January 18 letter.

That conclusion is further supported by ODF's subsequent communications with plaintiff. For example, on May 2, 2008, Burke Mayer, a procurement officer for ODF, told plaintiff in an e-mail that "[d]ecisions regarding further extension of the 2007 [agreement], if any, past the October 2008 termination date ha[ve] not be[en] addressed." In light of the context within which the January 18 letter was sent, we therefore conclude that, contrary to ODF's contentions in this case, that letter was not a final order for judicial review purposes that triggered the statutory 60-day deadline to seek judicial review.

At the earliest, the agency's decision became final with the issuance of the June 9, 2008, agreement, which finalized the new agreement between ODF and plaintiff (as a result of plaintiff's acceptance of ODF's offer in the February 12 letter). Arguably, the final order did not issue until even later, when ODF issued its June 13 e-mail in which it stated

"[e]ffective 06-13-08 the 2008 Award is done * * *." That e-mail, sent by an ODF official to all fire crew contractors, including plaintiff, makes it clear that, if a contractor had not yet received an offer to extend its contract for one year, it was not going to receive one, because ODF had completed its contract awards for 2008. At that point in time, ODF's decision to not grant plaintiff a one-year contract extension did not require any further agency action and precluded further agency consideration of the subject. We need not decide whether it was the June 9 or the June 13 e-mail that constituted the final order for judicial review purposes, however, because, in either event, plaintiff's request for judicial review was filed within 60 days. We therefore conclude that the trial court did not err in rejecting ODF's contention that plaintiff's request for judicial review had not been timely filed.

Affirmed.