No. 282 April 8, 2026 293

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

NEWSUN ENERGY LLC,
a Delaware limited liability company,
*Petitioner-Appellant,*

*v.*

PUBLIC UTILITY COMMISSION,
an agency of the State of Oregon,
*Respondent-Respondent,*

*and*

PACIFICORP,
an Oregon business corporation,
*Intervenor-Respondent.*

Deschutes County Circuit Court
22CV24304; A182798

Beth M. Bagley, Judge.

Argued and submitted July 7, 2025; intervenor-respondent's motion to dismiss because of event rendering appeal moot filed July 3, 2024, appellant's response filed July 17, 2024, respondent's reply in support of motion to dismiss filed July 24, 2024, and intervenor-respondent's reply filed July 24, 2024.

Casey M. Nokes argued the cause for appellant. Also on the briefs were Richard G. Lorenz and Cable Huston LLP.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Dustin Buehler, Assistant Attorney General.

Dallas DeLuca argued the cause for intervenor-respondent. Also on the brief were Kathryn P. Roberts and Markowitz Herbold PC.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Motion to dismiss as moot denied; reversed and remanded.

**AOYAGI, P. J.**

Petitioner NewSun Energy LLC (NewSun) appeals a circuit court judgment dismissing, for lack of subject matter jurisdiction, its claims (1) seeking judicial review of an order of respondent Oregon Public Utility Commission (PUC) as a final order in other than a contested case under ORS 183.484 and (2) to compel agency action under ORS 183.490.[1] NewSun contends that the circuit court erred in concluding that it lacked subject matter jurisdiction because, as to its first claim, the PUC order, which "acknowledges" PacificCorp's 2021 Integrated Resource Plan (IRP), is a final order within the meaning of ORS 183.480(3) and, as to its second claim, the court had subject matter jurisdiction under ORS 183.490 to compel the agency to act. The PUC and intervenor PacifiCorp contend that the circuit court properly granted their ORCP 21 A(1)(a) motion to dismiss for lack of subject matter jurisdiction and also contend that this appeal is moot. *Amici curiae* Green Energy Institute at Lewis & Clark Law School and Sierra Club agree with NewSun regarding its first claim.

As explained below, we conclude that the appeal is not moot and that the disputed PUC order, which we refer to as the 2021 acknowledgment order, is a final order subject to judicial review. We understand NewSun's claim under ORS 183.490 to be brought in the alternative to its claim for judicial review and believe that, under these circumstances, we need not address the second assignment of error. We reverse and remand.

## BACKGROUND

We begin by providing some background about the PUC and the integrated resource planning process. Among other things, the PUC is responsible for setting utility rates that are "fair and reasonable." ORS 756.040(1) (requiring the PUC to "protect [utility] customers, and the public generally, from unjust and unreasonable exactions and practices," to "obtain for them adequate service at fair and reasonable rates," and to "balance the interests of the utility investor

---

[1] The judgment also dismissed NewSun's claim seeking a declaratory judgment. NewSun does not challenge that dismissal, and we do not address it further.

and the consumer in establishing fair and reasonable rates"). "When the PUC sets utility rates, 'it is performing a quasi-legislative function.' '[R]atemaking is a unique enterprise that is governed by statute but largely left to the PUC's discretion.'" *Calpine Energy Solutions LLC v. PUC*, 298 Or App 143, 146, 445 P3d 308 (2019) (*Calpine*) (quoting *Gearhart v. PUC*, 356 Or 216, 221, 339 P3d 904 (2014) (brackets in *Calpine*; citation omitted)). The PUC is also "vested with power and jurisdiction to supervise and regulate every public utility *** in this state, and to do all things necessary and convenient in the exercise of such power and jurisdiction." ORS 756.040(2).

An integrated resource plan is a document memorializing, at a point in time, a utility's 20-year plan for future resource actions—for example, building new power plants or transmission lines or acquiring energy from renewable energy projects—that will allow it to continue providing service to its customers. As the PUC stated in the 2021 IRP acknowledgment order, "The IRP is a road map for providing reliable and least-cost, least-risk electric service to the utility's customers, consistent with state and federal energy policies, while addressing and planning for uncertainties." The IRP includes analysis and, based on the analysis, a "selection of a portfolio of resources with the best combination of expected costs and associated risks and uncertainties for the utility and its customers," *i.e.*, a "cost/risk portfolio." PUC Order No. 07-002, Appendix A, Guideline 1(c), pp 1-2, 2 n 1, *corrected by* Order No. 07-047. Based on its identification of the best cost/risk portfolio, the IRP includes an "Action Plan" of resource-related activities that the utility intends to undertake over the next two to four years to implement the plan. *Id.* at Guideline 4(n), p 5; *see also* OAR 860-027-0400 (2)(a) (an IRP "detail[s the utility's] determination of future long-term resource needs, its analysis of the expected costs and associated risks of the alternatives to meet those needs, and its action plan to select the best portfolio of resources to meet those needs").[2]

---

[2] OAR 860-027-0400 was amended in 2023 to reflect the requirements of Oregon Laws 2021, chapter 508 (House Bill (HB) 2021). As explained below, 348 Or App at 303 n 10, in this opinion, we do not consider HB 2021. Because the relevant text of the rule remains unchanged from the earlier version, we cite the current version throughout this opinion.

By order, the PUC has enacted "guidelines" that, as described in the 2021 acknowledgment order, "provide procedural and substantive requirements for utilities to meet in developing their IRPs." PUC Order No. 07-002, Appendix A; *see also* OAR 860-027-0400(2)(a) (an IRP is "the energy utility's written plan satisfying the requirements of Commission Order Nos. 07-002, 07-047 and 08-339"). Statutory requirements, which we will describe below, also apply to the PUC's acknowledgment of IRPs. A utility generally submits a new IRP to the PUC within two years of the PUC's acknowledgment of its previous IRP. PUC Order No. 07-002, Appendix A, at Guideline 3(a), p 3; OAR 860-027-0400(3).

The PUC reviews IRPs to ensure that they comply with the procedural and substantive requirements described above, and to determine whether the utility's plan is reasonable at the time of the IRP. It then issues an order that either acknowledges the IRP in full, acknowledges it in part, or does not acknowledge it.

In this case, the PUC's order acknowledges PacifiCorp's 2021 IRP, except for the portion regarding reliance on the Natrium nuclear plant, which it does not acknowledge. The order describes PUC's task in reviewing an IRP as follows:

> "In reviewing an IRP, we examine the resource activities in the Action Plan and determine, given the information available at the time, whether to acknowledge them based on the reasonableness of those actions. Our decision to acknowledge or not acknowledge an action item does not constitute ratemaking. The question of whether a specific investment made by a utility in its planning process was prudent will be independently examined in a subsequent rate proceeding. Acknowledgment, or nonacknowledgment, of an IRP is a relevant but not exclusive consideration in our subsequent examination of whether the utility's resource investment is prudent and should be recovered from customers."

## MOOTNESS

We first address PacifiCorp and the PUC's motion to dismiss the appeal as moot, on which the Appellate Commissioner deferred a ruling to the merits panel.

"[G]enerally speaking, a case becomes moot when a court's decision will no longer have a practical effect on the rights of the parties." *Dept. of Human Services v. T. J. N.*, 371 Or 650, 656, 540 P3d 540 (2023) (internal quotation marks omitted). "[T]he party moving for dismissal bears the burden of establishing that resolving the case will have no practical effect on the rights of the parties." *Id.* at 657.

PacifiCorp and the PUC argue that this appeal is moot because the 2021 IRP has been "superseded" by the acknowledged 2023 IRP. They contend that, although the acknowledgement of the 2021 IRP could theoretically still be relevant in a future rate case, that will occur only if PacifiCorp procures resources based on the 2021 IRP and places them in service. They further assert that, although PacifiCorp began in 2022 a process involving a request for proposals (RFP) based on the 2021 IRP, it cancelled that process and so will not procure any resources based directly on the 2021 IRP. In their view, that means that the 2021 acknowledgment order has no future consequences.

NewSun maintains that the appeal is not moot. It argues that the PUC's acknowledgment of the 2021 IRP—which includes explanation of PacifiCorp's plan with regard to many different resources, not just resources that it will procure through an RFP process based directly on the 2021 IRP—may be cited in support of any number of future ratemaking requests, not only requests based on resources resulting from the 2022 RFP. Essentially, as we understand it, NewSun asserts that, when a utility ultimately seeks to recover for new resources in a rate case, each acknowledged IRP in which it presented its plans regarding that resource and received PUC acknowledgment assists its case.[3]

Initially, we disagree with PacifiCorp and the PUC to the extent that they contend that the PUC's acknowledgment of the 2023 IRP deprives the 2021 IRP, and its acknowledgment order, of legal effect. They analogize this case to *Eastern Oregon Mining Association v. DEQ*, 360 Or

---

[3] NewSun also argues that the 2021 IRP order has at least one other ongoing effect, which is that "assumptions from the IRP flow into PacifiCorp's avoided cost calculation, as part of the Commission's implementation of the federal Public Utility Regulatory Policies Act (PURPA)." We need not reach that additional argument.

10, 16, 376 P3d 288 (2016), in which the Supreme Court held that a challenge to a permit was moot after the permit expired. However, unlike permits, which have no binding effect after they expire, or, similarly, juvenile dependency judgments, which have no binding effect after jurisdiction is dismissed, *see Dept. of Human Services v. G. D. W.*, 353 Or 25, 31-32, 292 P3d 548 (2012), the acknowledgment of a new IRP does not cause older IRPs to become unacknowledged and thus preclude any ongoing direct consequences. Rather, each acknowledged IRP keeps that status as to the time period to which it applies. The previous acknowledgment order does not lose its legal effect when a new IRP is acknowledged.

PacifiCorp and the PUC have not met their burden to establish mootness. As explained, the 2021 acknowledgment order remains in effect as to the period covered by the 2021 IRP notwithstanding the acknowledged 2023 IRP, and it may be relied on in future rate cases as support for the reasonableness of future rate increases. We are unpersuaded that NewSun is mistaken about the ongoing relevance of the 2021 IRP, or that it is impossible or extremely unlikely that the 2021 IRP will affect NewSun's rights in the future. We therefore deny the motion to dismiss the appeal as moot.

## WHETHER THE IRP ORDER IS A FINAL ORDER

The circuit court granted PacifiCorp and the PUC's ORCP 21 A(1)(a) motion and dismissed NewSun's petition for judicial review of the 2021 acknowledgment order, concluding that the court lacked subject matter jurisdiction because the order was not a final order and therefore not subject to judicial review. *See* ORS 756.610(1) (stating, with exceptions not relevant here, that "final orders of the Public Utility Commission are subject to judicial review as orders under the provisions of ORS 183.480 to 183.497"); ORS 183.480(3) ("any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order").

Under these circumstances, where the relevant facts are procedural and legal, we review for legal error. *See Advocates for School Trust Lands v. State of Oregon*, 346

Or App 668, 685, ___ P3d ___ (2026) (stating general standard of review for ORCP 21 motions); *Grobovsky v. Board of Medical Examiners*, 213 Or App 136, 142-46, 159 P3d 1245 (2007) (evaluating issue of whether an order is a final order for legal error based on the procedural history and the order's legal context).

An "order" is "any agency action expressed orally or in writing directed to a named person or named persons" other than agency employees. ORS 183.310(6)(a). A *final* order, which triggers the right to judicial review, is "final agency action expressed in writing" and it "does not include any tentative or preliminary agency declaration or statement that [p]recedes final agency action *** or [d]oes not preclude further agency consideration of the subject matter of the statement or declaration." ORS 183.310(6)(b) (formatting modified). In other words, in order to be final, an order must not be tentative or preliminary, meaning that it must not precede final agency action and must preclude further agency consideration of the subject matter. *Grobovsky*, 213 Or App at 143.

Given that definition, "whether an agency's order is final for the purpose of judicial review depends on the context of the regulatory scheme within which the agency issued the order." *Id.* That is so because whether an order meets the definition depends on "whether it is a preliminary step in reaching some later decision or is, itself, the ultimate decision." *Id.* "In a sense, every order is final as to the specific subject that it covers; for example, even an order postponing a hearing is final as to whether the hearing will occur on the original date." *Id.* Thus, simply to say that the order represents a decision on some topic does not answer the question of whether the order is subject to judicial review in its own right or, conversely, is a nonfinal order that, in most instances, will be subject to judicial review only after the agency issues a final order at a later point.[4]

---

[4] Under ORS 183.480(3), interlocutory review of nonfinal agency orders is available in an "action or suit" in a circuit court "upon showing that the agency is proceeding without probable cause, or that the party will suffer substantial and irreparable harm if interlocutory relief is not granted." *See Brian v. Oregon Government Ethics Commission*, 320 Or 676, 683, 891 P2d 649 (1995) (applying that provision). Absent the application of that provision, nonfinal agency orders are subject to review upon judicial review of the final order. *Oregon Health Care Assn.*

As described above, the 2021 order acknowledges all but one aspect of PacifiCorp's 20-year plan for resource-related actions. PacifiCorp and the PUC argue that it is not a final order because the planning process that results in the IRP, as well as the acknowledgment order, is simply a preliminary stage of the rate case, the rest of which will occur after the utility has taken the planned resource actions, brought new resources into service, and seeks to increase rates as a result. They assert that the 2021 acknowledgment order does not qualify as a final order because its subject matter is the reasonableness of the utility's plans, and acknowledging those plans does not preclude PUC from considering the reasonableness of the actual resource actions in the rate case.

NewSun and *amici* disagree with that characterization. They assert that the IRP process is a standalone proceeding that has legal significance apart from its effect in the rate case. They note that the PUC conducts the IRP process in its own docket with its own record (with an administrative law judge assigned to oversee the proceedings).[5] They point out that both the PUC itself and the legislature have enacted a variety of procedural and substantive requirements for IRP acknowledgment. They also note, and PacifiCorp and the PUC do not dispute, that the PUC does not revisit the correctness of its decision to acknowledge an IRP in the rate case, and they contend that, if an IRP acknowledgment order is not a final order, then no judicial review of the IRP order can ever take place.[6] Even assuming that judicial review could take place in the rate case,

_v. Health Div._, 329 Or 480, 492, 992 P2d 434 (1999) ("Except as provided in ORS 183.480, only on review of a final order may a court consider a claim that, during its consideration of the matter, the agency issued an erroneous nonfinal order that warrants relief under ORS 183.482(8) or ORS 183.484(4)."); _Hawes v. DEQ_, 203 Or App 255, 265, 125 P3d 778 (2005) ("[a]t the point at which the DEQ takes final action [by issuing a final order], plaintiffs will be entitled to challenge the lawfulness of that action by, among other things, challenging the correctness of" the determination in the nonfinal order).

[5] The PUC characterizes its IRP procedure as a "hybrid" process that is ultimately, in its view, simply a public meeting to which a variety of unusual procedural and substantive requirements apply. PUC Order No. 20-386, Attachment A, _Internal Operating Guidelines_, at 24-27.

[6] As noted above, 348 Or App at 300 n 4, a nonfinal order may be challenged on judicial review of a later final order. Thus, if we were to conclude that the 2021 IRP acknowledgment order was not a final order because it was a preliminary stage of

they contend that the culmination of the rate case—when the utility has carried out its planned resource actions and put its new resources into service and is seeking to recover the cost through a rate increase—is far too late for meaningful judicial review of the PUC's oversight of the utility's planning process.

We agree with NewSun that the reasonableness of the utility's plan is not all that an IRP acknowledgment order determines. The IRP process originated in 1989, in PUC Order No. 89-507, without any legislative mandate. The PUC explained that the process was "necessary and consistent with its statutory obligation to represent customers and the public generally in matters over which it has jurisdiction and to obtain for customers and the public adequate service at fair and reasonable rates." *Id.* at 3. However, over time— and, in particular, as the legislature has enacted programs requiring the PUC to ensure that utilities' actions not only yield least-risk least-cost service, as is still required in the rate case, but also are consistent with the state's environmental protection goals—the legislature has added its own goals and requirements to the process that the PUC originally formulated for a narrower purpose. *See* ORS 469A.075(4)(c) (2017), *amended by* Or Laws 2023, ch 54, § 1 (requiring electric utilities to create an "implementation plan" for the renewable portfolio standard, which requires a percentage of the utility's electricity to come from renewable sources, and tasking the PUC with adopting rules for "integration of the implementation plan with the integrated resource planning guidelines established by the [PUC] for the purpose of planning for the least-cost, least-risk acquisition of resources");[7] ORS 757.536 (discussed below). Those statutory requirements demonstrate that the resource planning process is no longer merely a preliminary stage of a

---

the rate case, parties would be able to challenge it on judicial review of the final order that the PUC eventually issued in a rate case.

  [7] In 2023, the legislature took action itself to integrate the renewable portfolio requirements into the IRP process. ORS 469A.075(1), (2). The PUC must now "review a plan for meeting the requirements of the renewable portfolio standard and take appropriate action as part of the procedure for acknowledgment of an electric company's integrated resource plan." ORS 469A.075(3). Because those amendments were made after the PUC issued the order on review, we do not consider them.

rate case; rather, it now has significance apart from the rate case, and the IRP acknowledgment order is the culmination of that independent planning proceeding.

One legislative requirement in particular shows that the IRP acknowledgment order is a final order that does not precede final agency action and precludes further consideration of the subject matter by the PUC. In 2009, the legislature established a greenhouse gas emission standard for electric utilities and required that, when acknowledging an IRP, the PUC must determine that "the baseload electricity proposed to be acquired under [any long-term financial commitment that an electric company or electricity service supplier plans to make] is produced by a generating facility that complies with the greenhouse gas emissions standard established under ORS 757.524."[8] ORS 757.536(1)(a). The PUC "may not acknowledge in an integrated resource plan" a long-term financial commitment that does not comply.[9] *Id.* Under that provision, an IRP acknowledgment order necessarily includes a PUC determination that any long-term financial commitments identified in the IRP comply with the greenhouse gas emission standard established under ORS 757.524. A decision on that question at that procedural point is required by the statute, and it precludes the agency from further considering the subject matter—whether the IRP includes long-term financial commitments to generating facilities that do not comply with the greenhouse gas emission standard. That provision demonstrates that the legislature understands the resource planning process as a standalone proceeding that is subject to a requirement that is separate from any rate case that will eventually occur and, consequently, culminates in a final order.[10]

---

[8] "'Long-term financial commitment' means an investment in or upgrade of a generating facility that produces baseload electricity, or a contract with a term of more than five years, beginning on the date on which the contract is executed, that includes acquisition of baseload electricity." ORS 757.522(10)(a).

[9] *See* ORS 757.536(1)(a) ("The Public Utility Commission may not acknowledge in an integrated resource plan, or allow in customer rates, the costs of a long-term financial commitment by an electric company or by an electricity service supplier unless the baseload electricity proposed to be acquired under the commitment is produced by a generating facility that complies with the greenhouse gas emissions standard established under ORS 757.524.").

[10] In 2021, the legislature enacted HB 2021. Or Laws 2021, ch 508, *codified at* ORS 469A.400 - 469A.475. HB 2021 represents a logical extension of the earlier

The same statutory provision prohibits the PUC from "allow[ing] in customer rates" the costs of long-term financial commitments to generating facilities that do not comply. ORS 757.536(1)(a). If the provision simply required the PUC to ensure general compliance with the greenhouse gas emission standards, then we might conclude that it does not preclude later consideration of the subject matter in the rate cathe greenhouse gas emission standard. The fact that the PUC acknowledges IRPs on a frequent basis does not mean that its acknowledgment of the IRP for a specific time period is not final.

Ultimately, the PUC contends that "to the extent they are relevant to the utility planning process, the [PUC] has chosen to implement its policy and regulatory objectives," including on topics like renewable energy and greenhouse gas emissions compliance, "through an ongoing, iterative process in which the utility receives real-time feedback from the [PUC], staff, stakeholders, and interested parties, and the prudency of the utility's decisions is ultimately decided in a future rate case." It is true that, in its orders addressing the resource planning process, that is how the PUC has explained its practices. The problem with that view, however, is that, ultimately, the PUC is an administrative agency, and, consequently, its actions are constrained by legislation. Although the legislature has given the PUC broad discretion in ratemaking, *Calpine*, 298 Or App at 146, that discretion is necessarily limited by legislative action. As explained above, the legislature has taken actions that recognize that the resource planning process is not part of ratemaking; rather, the resource planning process now requires the PUC, in addition to considering utilities' actions

legislation, discussed in the text, indicating the legislature's understanding that the resource planning process has independent significance. In addition to specifying targets for greenhouse gas emission reductions that are significantly more stringent than the standards set in ORS 757.524, HB 2021 requires the creation of "clean energy plans" that are intertwined with the resource planning process, IRPs, and the PUC's acknowledgment orders. The merits of the parties' dispute in this case goes to whether the IRP order at issue here was subject to any of HB 2021's provisions. Given that PacifiCorp and the PUC contend that none of the requirements of HB 2021 yet applied at the time of the 2021 IRP acknowledgment order and our conclusion that, even under the pre-HB 2021 statutes, the order is a final order, we do not consider that legislation in determining whether the 2021 IRP acknowledgment order is a final order.

with an eye toward future ratemaking, to implement legislatively enacted environmental goals. In light of the legislature's actions in that regard, IRP acknowledgment orders are final orders within the meaning of ORS 183.480(3) and are subject to judicial review as such.

We therefore conclude that the circuit court erred in granting PacifiCorp and the PUC's ORCP 21 A motion. We reverse and remand for the court to consider the merits of NewSun's petition for judicial review.

Motion to dismiss as moot denied; reversed and remanded.